Lucey v. The Hannibal Oil Co.

LUCEY, *Appellant*, v. THE HANNIBAL OIL COMPANY.

Division Two, June 4, 1895.

1. **Master and Servant:** ASSUMPTION OF RISKS. One entering the service of another assumes all risks naturally incident to, and within the scope of, that employment.

2. ———: MANIFEST DANGER: ASSUMPTION OF RISKS: PRESUMPTION. If, after his employment, and in the course thereof, the servant discovers manifest danger, and continues his service without complaint, he will be presumed to have assumed the risks.

3. ———: ———: ———: CONTRIBUTORY NEGLIGENCE. Where a servant is ordered into a place of danger by his employer, or is doing something at the master's orders not in the ordinary course of his employment, there is no assumption of risks and the master is responsible for any injuries sustained by the servant, while acting in obedience to the command of the master, unless the danger was so manifest that no prudent man would have entered into it, or the servant was guilty of negligence contributing directly to his own injury.

4. ———: ———: ———. An employee who knew the dangerous condition of the crossbeams in a building where he was required to work, and who himself assisted in propping such beams in a defective and insecure manner, and who, with this knowledge, continued to work in the same place, notwithstanding there was no promise by defendant to make the beams at some future time more secure, will be held to have assumed the risk of injury from such defect.

5. ———: ———: CONTRIBUTORY NEGLIGENCE. An employee at work rolling barrels of oil from a building known by him to be dangerous, in consequence of the defective condition of the beams overhead and the props he has himself placed under them, and who rolls the barrels under the defective beam when he might have avoided this risk by moving out of his way other barrels of oil and empty barrels, is guilty of contributory negligence.

*Appeal from Hannibal Court of Common Pleas.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*Thomas H. Bacon* for appellant.

(1) To say that if plaintiff did not complain he was guilty of contributory negligence, and if he did complain he must have known and therefore assumed the risk, is to put the plaintiff through an ordeal but no trial. It is good provincial logic but nowise tolerable fallacy. *Keegan v. Cavanaugh*, 62 Mo. 230. (2) There is no specification of any contributory negligence (*Harrison v. Missouri, etc.*, 74 Mo. 364), and the evidence shows unusual care on the plaintiff's part. The hurried propulsion by the foreman leading and directing over the route taken was the agency that loosened the prop. (3) In this case the defendant pleads contributory negligence, which means an averment that by the use of ordinary care the plaintiff could have avoided the injury. The defendant avers that the alleged "injuries resulted from and were occasioned by plaintiff's own negligence and carelessness directly contributing thereto, in the manner and by the means employed by him in rolling or removing said barrel of oil from said warehouse." This is a solemn averment that the plaintiff by exercise of due care could have avoided the injury. In such case there could be no

assumption of risk, for if this plaintiff, by the use of due care, could have avoided the injury, an assumption of risk is not imputed. *Soeder v. Railroad*, 100 Mo. 673; *Mahaney v. Railroad*, 108 Mo. 191. (4) There was no assumption of risk. In this case the servant did not have an equal knowledge as to the efficiency of the supposed fastening of the prop to the joist. Only the president who did that part could know that. The servant may be inherently and actually required to rely on his own judgment, as where the principal is not present and has no occasion to be present, or where, as in this case, the servant may be inherently or actually entitled to act on the judgment of his participant principal. The servant may act under no specific direction and without remonstrance on servant's part, as in *Stoddard v. St. Louis, etc.*, 65 Mo. 514, and 75 Mo. 651; *Aldridge v. Midland, etc.*, 78 Mo. 559; *Devlin v. Railroad*, 87 Mo. 570; *Thorpe v. Railroad*, 89 Mo. 650; *Soeder v. Railroad*, 100 Mo. 673; *Alcorn v. Railroad*, 108 Mo. 81; *Williams v. Railroad*, 109 Mo. 475; *Swadley v. Railroad*, 118 Mo. 268; *Williams v. Railroad*, 119 Mo. 316. Or the servant may, under specific directions, act without remonstrance, as in *Huhn v. Railroad*, 92 Mo. 440; *Stephens v. Railroad*, 96 Mo. 207; *Hamilton v. Mining Co.*, 108 Mo. 364; *Steinhauser v. Spraul*, 127 Mo. 541. Or a servant may act under specific direction after a remonstrance is overruled, as in *Keegan v. Cavanaugh*, 62 Mo. 230; *Flynn v. Railroad*, 78 Mo. 195. In the case at bar there was a remonstrance sustained as to the maintenance of the structure with a fair assurance and a fair expectation of the abatement of the risk. *Conroy v. Iron Works*, 62 Mo. 35; Cooley on Torts [Ed. 1879], p. 559, sec. 6. And a remonstrance overruled as to resumption of work prior to permanent adjustment. *McGowan v. Co.*, 61 Mo. 528; *Malone v. Morton*, 84 Mo. 436. The plaintiff does not sue for the

placing of the prop, but for the maintenance of the prop pending specific directions to work in its neighborhood. The remonstrance is notice that the risk is not assumed. A fairly inferred stipulation to readjust, or specific unqualified direction, is acceptance of such non-assumption. These elements are absent in *Fugler v. Bothe*, 117 Mo. 475, and in *Steinhauser v. Spraul*, 127 Mo. 541. Plaintiff's involuntary agency in partially aiding in the erection of this structure can not debar him. *Swadley v. Railroad*, 118 Mo. 268. Plaintiff was entitled to a jury.

*F. L. Schofield* and *Geo. A. Mahan* for respondent.

(1) The plaintiff assisted in bracing up the joist. He went for and selected the scantling and put it in place. Nothing whatever was done without his knowledge and assistance. He was just as familiar with the repairs as the defendant. The danger, if any, was well known to plaintiff. There were no latent conditions. Everything was open and obvious. Plaintiff, therefore, assumed the risk and can not recover. The demurrer was properly sustained. *Steinhauser v. Spraul*, 127 Mo. 541; *Fugler v. Bothe*, 117 Mo. 475; *Thomas v. Railroad*, 109 Mo. 198; *Alcorn v. Railroad*, 108 Mo. 97; *Gleason v. Mfg. Co.*, 94 Mo. 201; *Aldridge v. Furnace Co.*, 78 Mo. 559; *Price v. Railroad*, 77 Mo. 508; *Smith v. Railroad*, 69 Mo. 32; *Devitt v. Railroad*, 50 Mo. 304; *Williams v. Railroad*, 119 Mo. 323; *Porter v. Railroad*, 71 Mo. 66; *Watson v. Coal Co.*, 52 Mo. App. 366; Wood on Master and Servant, pp. 680, 698, 741; Whit. Smith Neg., p. 133; Webb's Pollock on Torts, p. 192, note and cases cited; 2 Thompson on Neg., 1008. The facts in this case take it out of the doctrine of complaint of danger by servant and promise to repair by master. Here there is no such thing as the servant being lulled into security by

the master's promise to repair. Plaintiff knew the prop was a mere temporary expedient awaiting a carpenter to make more substantial repair. He also knew that such temporary repair left the place dangerous in the meantime. He says himself that it was liable to kill somebody. It was obvious; it was imminent, and known to plaintiff, and liable to fall at any moment. Hence this alleged complaint had no connection with his injury. The evidence shows that plaintiff knew more about the danger than the master. He could not recover if the knowledge had only been equal. *Carleson v. Water Co.*, 59 N. W. Rep. 217; *Feely v. Cordage Co.*, 37 N. E. Rep. 368; *Wilson v. Mills*, 34 N. E. Rep. 90; *Taylor v. Railroad*, 5 Am. and Eng. R. R. Cases, 460. (2) Even if plaintiff had been assured by a superintendent that there was no danger, and told to work at the place he could not recover. Plaintiff was of full age and capacity and knew the danger. *Showalter v. Co.*, 60 N. W. Rep. (Wis.) 257; *Toomey v. Steel Works*, 50 N. W. Rep. (Wis.) 850; *Linch v. Mfg. Co.*, 143 Mass. 206; *Bradshaw's Adm'r v. Railroad*, 21 S. W. Rep. (Ky.) 346; *Dougherty v. Co.*, 60 N. W. Rep. 274; *Woodley v. Railroad*, L. J. 46 Exch. Div. 521; *Leay v. Railroad*, 139 Mass. 580. (3) There is no evidence showing that Mr. Nau directed plaintiff where to roll the barrel, but if he had, they were fellow servants and defendant was not liable for anything done or said by Mr. Nau. They both put barrels in the building and rolled them out. Mr. Nau probably had other things that he did, but he had no authority or control over the plaintiff, and immediately previous to the injury both were engaged exactly in the same thing, rolling barrels, and one only a few feet behind the other. At the exact time of the injury, Nau had withdrawn and was engaged in work equally menial. *Dixon v. Railroad*, 109 Mo. 413; *Murray v. Railroad*, 98 Mo. 573; *Higgins v. Rail-*

*road*, 104 Mo. 414; *Schaub v. Railroad*, 106 Mo. 74; *Relyea v. Railroad*, 112 Mo. 86. (4) There were other ways known to the plaintiff along which he could have rolled the barrel and thus avoided the place of injury. Under his own admission he knew that point was dangerous. In face of that fact he elected to go that way and by his own act, directly contributing thereto, he caused the joist or beam to fall on him. The only reason given for this election was to save himself the trouble of moving a number of barrels. (App. brief, 34 and 35.) Plaintiff was, by uncontradictory testimony, guilty of contributory negligence and can not recover. *Gleeson v. Mfg. Co.*, 94 Mo. 206; *Yancy v. Railroad*, 93 Mo. 433; *Maxey v. Railroad*, 113 Mo. 11; *O'Donnel v. Patton*, 117 Mo. 13; Beach on Contributory Neg., sec. 37; Buswell on the Law of Personal Injuries, sec. 144; *Taylor v. Mfg. Co.*, 143 Mass. 470; *Hutchins v. Express Co.*, 61 Mich. 252; *Bruker v. Town of Covington*, 63 Ind. 33; *Railroad v. Whitacre*, 35 Ohio St. 637. (5) It was the duty of the court to sustain the demurrer to the evidence. *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 70 Mo. 91; *Long v. Moon*, 107 Mo. 339; *O'Hare v. Railroad*, 95 Mo. 682; *Maloy v. Railroad*, 84 Mo. 270; *Jackson v. Hardin*, 83 Mo. 186.

BURGESS, J.—This is an action by plaintiff to recover damages for personal injuries sustained by him while a laborer in the service of defendant. The action is predicated on the negligence of defendant in propping up a latteral crossbeam in the building where he was required to work in the discharge of his duties, in consequence of which the crossbeam fell and struck him on the head and arm and injured him. The defense was assumption of the risk, and contributory negligence on the part of plaintiff.

At the conclusion of the testimony introduced by plaintiff, defendant interposed a demurrer thereto, which was sustained by the court and final judgment rendered for defendant, from which plaintiff appealed.

Defendant is engaged in buying and selling coal oil, and, at the time of the injury and prior thereto, stored its barreled oil in a wooden warehouse, where plaintiff was hurt. At the time of the accident he was about fifty-one years of age, and had been in defendant's service about five months.

On the eighteenth day of January, 1893, while plaintiff and another employee engaged in the same service were taking and removing barrels of oil from said warehouse, they discovered that three of the joists or crossbeams were pulling away from the north wall of the building and were about to fall. Defendant's president Chester Carter's attention was then called to the condition of the crossbeams, when he ordered plaintiff another employee, Nau, to prop them up. The props were then obtained, and, with the assistance and superintendence of Carter, plaintiff and Nau placed them under the crossbeams, one end being placed against the beams, and the other on the ground. The props were not properly adjusted; they were not set straight, which was patent, and plaintiff well knew that their condition rendered the beams unsecure and dangerous. He so stated in his evidence before the jury. With respect to the unsafe condition of the beams he testified as follows:

"*Q.* After you got it done, why did you tell Bert Carter it was not fixed right; that it was dangerous? *A.* Bert Carter came there and he said to his father: 'You are here again.' He never made him any answer. Then I said: 'Bert Carter, if this is left this way it will kill somebody, he is not doing it right, the props ought to be put straight.'

"*Q.* Why did you think it would kill somebody?
*A.* I did not think he had fixed it right.

"*Q.* What was the reason you thought it would kill somebody; did you think it would fall? *A.* I did not know, I did not think it would be myself.

"*Q.* You thought it would kill somebody? *A.* I did not know whether it would or not. I told Bert Carter if it was left so it would kill somebody.

"*Q.* That is the way you left it? *A.* Yes, sir.

"*Q.* How did you think it would kill somebody? *A.* I said if it was left that way it would kill somebody.

"*Q.* Why? *A.* I saw Mr. Carter was not propping it right.

"*Q.* In what respect? *A.* Because he was not putting the props straight under.

"*Q.* At the time you said to Bert Carter it would fall and kill somebody you knew the condition of it then? *A.* No, sir, I didn't know.

"*Q.* What did you say that, for? *A.* Because I saw he was not propping it right, that is the reason I said that.

"*Q.* You mean he was not propping it in a safe way? *A.* I thought he was not, that is, if it was left in that way.

"*Q.* You helped him do that? *A.* Yes, sir.

"*Q.* It was left in that condition? *A.* Yes, sir."

The props were only temporary but remained in the same condition as originally placed, until the twentieth day of January, 1893, when plaintiff was engaged in his usual employment of rolling barrels of coal oil out of the warehouse, and while rolling a barrel immediately under one of the beams it fell upon him and caused the injury complained of.

It is a familiar principle that a person entering the service of another assumes all risks naturally incident

to, and within the scope of, that employment.  Or, if, after his employment, and in the course thereof, he discovers manifest danger, and continues his service without complaint, he will be presumed to have assumed the risks.  There is no pretense that plaintiff was ordered into a place of danger by his employer, or that he was injured while obeying the command of his master in doing something not in the ordinary course of his employment.  In such circumstance there is no assumption of risks and the master is responsible for any injuries sustained by the servant, while acting in obedience to the command of the master, unless the danger was so manifest that no prudent man would have entered into it, or the servant was guilty of negligence contributing directly to his own injury.

In the case in hand, plaintiff knew all about the dangerous condition of the beam, having assisted in placing and adjusting the props under it.  It was not a latent defect of which he had no knowledge and of which his employer knew, or might have known by the exercise of that degree of diligence that is required of the master in furnishing a safe place for his servant to work.  They both knew its condition.  Here the danger was not only apparent but plaintiff assisted in making it dangerous.  Yet he continued to remain in the same service as before, and to perform his service with a knowledge of the increased risk, in the face of danger which he knew existed, and to which he was exposed, and now seeks to compel his employer to respond in damages for injuries to his person, sustained by him in consequence of risks which he must be held to have assumed.  This he can not do.  *Sowden v. Mining Co.*, 55 Cal. 443; *Smith v. Sellars*, 40 La. Ann. 527; *Missouri Furnace Co. v. Abend*, 107 Ill. 44; 14 Am. and Eng. Encyclopedia of Law, 856; *Feely v. Pearson Cordage Co.*, 37 N. E. Rep. 368.

While the props that were placed under the beam were only temporary, there was no promise by defendant to make the beams at some future time more secure, by reason of which plaintiff was induced to continue in its service. Furthermore, the evidence showed that plaintiff could have rolled the barrels which he was engaged in moving at the time of the injury, out of the building without incurring any risk, by keeping away from the props, had he taken the time and trouble to have moved out of his way other barrels of oil, and empty barrels.

From what has been said, the judgment should be affirmed. It is so ordered. All of this division concur.