HARFF, Plaintiff in Error, v. GREEN et al.

Division One, March 29, 1902,

1. **Negligence**: CONTRACTOR: FALLING OF BRICK ON CARPENTER: SAFETY COVERING: MANIFEST DANGER: CONTRIBUTORY NEGLIGENCE. Plaintiff, a carpenter in the employ of a subcontractor for the carpenter work on a building, while working on the third floor, was injured by the falling of a wheelbarrow of brick from a gangway two stories above, where the employees of the brick subcontractor were engaged in building the walls. The evidence did not show any custom or duty which required the brick contractor to construct coverings to prevent bricks from falling upon the carpenters below. *Held*, that if such covering was so manifestly necessary to the safety of the carpenter as to make it negligence for the brick contractor not to construct it, then the danger to the carpenters of working without such a safety covering was so obvious and imminent as to make it contributory negligence for them to work there, and, hence, the brick contractor was not liable.

2. ——: ——: REASONABLY SAFE PLACE TO WORK IN: OBVIOUS DANGER: ASSUMPTION OF RISK. There was a direct statement by the plaintiff that the danger was glaring, obvious and imminent and an implied admission by the general contractor for the whole work that such was the case, in that he told him he could either work there or quit. *Held*, that the plaintiff, in continuing to work, assumed the risk, and the general contractor is not liable.

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant*, Judge.

AFFIRMED.

*Virgil Rule* and *Charles & Lackey* for plaintiff in error.

(1) Defendant Baker is liable. 1. (a) For the negligence of his servant in dropping the bricks from the wheelbarrow upon the plaintiff. Shepard v. Creamer, 160 Mass. 496; Rose

Harff v. Green.

v. St. Louis, 152 Mo. 602; Dohn v. Dawson, 90 Hun 271; 157 N. Y. 686. (b) For negligence in not placing sufficient planking on the joists where his servants were at work to prevent bricks from falling on the men below them. 2. Whether plaintiff was guilty of contributory negligence in not knowing that there was no covering over him, was, in any view of the case, a question for the jury, and he should not have been non-suited. Hamman v. Central C. & C. Co., 56 S. W. 1094; Swadley v. Railroad, 118 Mo. 268; Smith v. Day, 100 Fed. 244. 3. (a) This defendant, in prosecuting his work on the building, owed at least the same duty to persons lawfully on the premises at work below his men, that he owed to passers-by on the street below. And this is true, regardless of the fact that there was no contractual relation existing between plaintiff and this defendant. (b) He is liable for negligence in dropping the bricks, no matter whom they may have struck. 4. The well-established doctrine in this State is that, "the servant's claim should be barred only by contributory negligence, and that this should not, except in the clearest cases, be inferred, as a matter of law, from mere knowledge of the dangerous conditions." Swadley v. Railroad, 118 Mo. 278; Wake v. Price (Ky.), 58 S. W. 519; Deweese v. Iron Co., 54 Mo. App. 482; Smith v. Day, 100 Fed. 244; Hamman v. Central C. & C. Co., 56 S. W. 1091. 5. Defendant Baker is liable regardless of the lack of contractual relationship with plaintiff. Dohn v. Dawson, supra; Lottmann v. Barnett, 62 Mo. 159; Griffiths v. Wolfram, 22 Minn. 185. (2) Defendant Green is liable. 1. (a) Because he had general charge and management of all the work. Dettmering v. English (N. J.), 48 L. R. A. 106; Boden v. Demwolf, 56 Fed. 846; Murray v. Dwight, 161 N. Y. 301; Independence v. Slack, 134 Mo. 66. (b) Because he selected the place where plaintiff should work, and it was his duty to select a safe place for him. (2) When a contractor employs a subcontractor to do certain portions of the work, the contractor is bound to do his part of the work so

as to render it safe.for the employees of the subcontractor. Johnston v. Ott, 155 Pa. St. 17; Dettmering v. English, supra; Murray v. Dwight, supra; Jones v. Railroad, 125 Mo. 666; Boden v. Demwolf, 56 Fed. 848. 3. Defendant Green is liable regardless of the fact that the plaintiff sustained no contractual relation to him. Lottman v. Barnett, supra; Griffiths v. Wolfram, 22 Minn. 187; Coughton v. Globe, etc., Co., 56 N. Y. 124; Devlin v. Smith, 89 N. Y. 470.

*A. & J. F. Lee* and *T. J. Rowe* for defendants in error.

ROBINSON, J.—On September 17, 1892, there was in process of construction, at the corner of Ninth street and Washington avenue, in St. Louis, a certain nine-story brick building. Defendant Green was the contractor for the whole work, and Patrick McCarthy was his superintendent or foreman. Defendant Baker was the subcontractor for the doing of the brick work, and defendant Seger was the subcontractor for the doing of the carpenter work. The plaintiff was employed by defendant Seger. On the day stated the bricklayers were at work carrying up the walls of the fifth story, and the carpenters were at work laying the floors on the third story. The bricklayers had erected a scaffold five or six feet above the joists of the fifth story to stand on. This scaffold extended five or six feet out from the wall. From the scaffold, on which the bricklayers stood while working, to the elevator, which was about fifteen feet distant, there was a gangway, composed of two planks laid side by side, over which the laborers wheeled brick in wheelbarrows from the elevator to the place on the platform where the bricklayers were at work.

When the plaintiff and William Schneider, a carpenter also employed by Seger, went to work on the morning in question, McCarthy directed them to lay the flooring on the third floor, directly under the gangway aforesaid between the elevator and the platform. They objected to working there, and

Schneider told McCarthy it was dangerous to work there because there was no covering for safety over them and the bricks were liable to fall on them and hurt them. McCarthy answered: "If you don't want to work there you have to pick up your tools and go home, I can hire some other men." There were a couple of boards belonging to the bricklayers lying there and McCarthy told Schneider and the plaintiff to take them and make a covering as well as they could, and they did so. The testimony showed, however, that it was not a sufficient or safe covering, and that while the carpenters were at work laying the floor on the third story, in some manner a wheelbarrow loaded with bricks fell over or through the said gangway and some of them struck the plaintiff and injured him, and he brought this action for ten thousand dollars damages against Green, the general contractor, Baker, the brick subcontractor, and Seger, the carpenter subcontractor.

Green and Baker answered separately, by a general denial and a plea of contributory negligence. Seger made default. The testimony showed that it was the custom for the brick contractor to ask the general contractor to put up a covering for safety to keep bricks from falling and injuring the carpenters who were working on the lower floors, and that it was the custom for the general contractor to do so. It also appeared that McCarthy, the superintendent or foreman for Green, the general contractor, gave orders to any or all of the men, by whomsoever employed, as to where they should work and they were obliged to obey such orders.

Upon this showing the circuit court sustained a demurrer to the evidence as to defendants Green and Baker, on the ground that there was no contractual relation between them and the plaintiff, and that the relation of master and servant did not exist between them or either of them and the plaintiff, and that they had not violated any duty they owed to the plaintiff. The plaintiff then took a nonsuit as to all of the de-

fendants, and after an unsuccessful motion to set it aside, appealed to this court.

I. The petition bases a right to recover against Baker and Green upon the ground that it was their duty to so carry on the brick work as not to create a nuisance on the premises that would injure any person lawfully upon the premises, and that they were negligent in doing the brick work, which negligence caused the injury to the plaintiff, and the petition bases a right to recover against Seger and Green upon the ground that it was their duty to furnish plaintiff a reasonably safe place in which to work and they failed to do so. The petition states that the proximate cause of the injury was the negligence of one of the servants of defendant Baker in letting bricks fall from a wheelbarrow he was wheeling across the gangway between the elevator and the platform on which the bricklayers were working.

There was no evidence introduced to show any custom or duty that required Baker to construct safety coverings to prevent bricks falling upon the carpenters or other workmen below. It is too plain to admit of serious discussion that if such a safety covering was so manifestly necessary to the safety of the carpenters as to make it negligence for the brick contractor not to construct it, the danger to the carpenters of working without such a safety covering was so obvious and imminent as to make it contributory negligence for them to work there. Hence, if the brick contractor was negligent, the carpenters were equally negligent, and therefore there could be no recovery by any of the latter against the former.

For the law is well settled that one who has failed to exercise ordinary care to insure his own safety, can not recover against one who owed him only a duty of ordinary care to protect him from the effects of his negligence. [Barton v. Railroad, 52 Mo. 253; Doss v. Railroad, 59 Mo. 27; Carroll v. Trans. Co., 107 Mo. 653; O'Donnell v. Patton, 117 Mo. 13.]

The evidence introduced by the plaintiff to establish a custom, so far as it applied to the brick contractor, only tended to show that it was his duty to call upon the general contractor to provide safety covers, and there was no evidence as to whether or not, Baker, the brick contractor, made any such call upon Green, the general contractor, and in the absence of affirmative proof that Baker did not call upon Green to do so, the presumption of law is that he did his duty, and did so call upon Green, and therefore the plaintiff failed to make out a prima facie case.

But aside from this the testimony introduced to establish such a custom was materially weakened, if not entirely nullified by the testimony of the plaintiff himself, who, in speaking of erecting safety covers, said:  "It is done according to the specifications." If this be true then the erection of such safety covers, and who shall erect them, is governed by the specifications, and there is no evidence in this case as to what the specifications provided in that respect.

So that so far as defendant Baker is concerned the plaintiff wholly failed to make out a case upon any theory of the law.

But it is charged that defendants Green and Seger are liable because they failed to provide the plaintiff with a reasonably safe place in which to work.

There can be no doubt about the existence of a rule of law requiring the master to furnish the servant a reasonably safe place in which to do his work, and of the master's liability to the servant if he fails to comply with this rule.    [Turner v. Haar, 114 Mo. 335; Herdler v. Range Co., 136 Mo. 3; Dayharsh v. Railroad, 103 Mo. 570.]

But what is meant by a safe place, has no reference to the patent or obvious safety or unsafety of the place, because in the nature of things many kinds of labor have to be performed under conditions that are relatively unsafe and often-

times dangerous. [Fugler v. Bothe, 117 Mo. 475; Stein-hauser v. Spraul, 127 Mo. 541.]

On the other hand, the servant is not obliged to quit the service of the master because he has failed to furnish safe appliances or a safe place, and by so remaining in such employ the servant does not waive his right to recover for injuries received in consequence of failure of duty on the master's part, if he reasonably believed that he could use safely the tools and appliances, or work in the place furnished by the exercise of care and caution. [Dale v. Railroad, 63 Mo. 455; Hamilton v. Mining Co., 108 Mo. 364; Mahaney v. Railroad, 108 Mo. 191.]

On the contrary, if the appliances or place to work furnished is so obviously or glaringly dangerous that a person of ordinary prudence would not have used such appliances or worked in such a place, then the servant, by continuing in the service and using such appliances or working in such a place, assumes the risks incident thereto, and the master is not liable. [Steinhauser v. Spraul, 114 Mo. 551; Ibid., 127 Mo. 541; Settle v. Railroad, 127 Mo. 336; Rains v. Railroad, 71 Mo. 164; Hamilton v. Mining Co., 108 Mo. 364; Soeder v. Railroad, 100. Mo. 673; Shortell v. St. Joseph, 104 Mo. 114; O'Mellia v. Railroad, 115 Mo. 205.]

In the case at bar it appears that both plaintiff and his fellow-workman, Schneider, who was also his principal witness, knew that it was dangerous to work on the third floor laying flooring while the bricklayers were at work on the fifth floor, and also knew that the gangway from the elevator to the platform where the bricklayers were working, was so narrow and improperly constructed that bricks were liable to fall upon them while they were laying the floors on the floors below such gangway. Schneider objected to working there and told McCarthy, Green's superintendent, that it was dangerous to work there. McCarthy answered: "If you don't want to work

there you have to pick up your tools and go home.    I can hire some other men."

Here was a direct statement by the servants that the danger was glaring, obvious and imminent, and an implied admission by the master that such was the case, with the alternative presented by the master to the servants to go on and assume the risk or to quit the employ.    And the servants elected to assume the risk.    In addition, the testimony discloses that the master told the servants there were a couple of boards lying there and that they could use them to "make a covering as well as we could," and that they did so.    There was no assurance of safety by the master, there was no promise to protect against the imminent and obvious danger, there was no opinion expressed that by the use of the two boards the place could be rendered safe, but there was the emphatic statement by the master that if the servants did not want to work there they could pick up their tools and go home.    It would be hard to conceive a case where the risk was not more completely and knowingly assumed by a servant than is presented by the facts in this case.    The accident to the plaintiff is greatly to be deplored, but no liability has been established on the part of defendants Baker or Green, and we are not concerned now with defendant Seger, because he made default, and the nonsuit as to him was therefore voluntary.

The judgment of the circuit court was for the right parties and it is affirmed.

All concur, except *Valliant, J.,* not sitting.