'  100     199
   102    ²580

LENA ADOLFF, Respondent, v. COLUMBIA PRET-
ZEL & BAKING COMPANY, Appellant.

St. Louis Court of Appeals, March 17, 1903.

1. **Injuries, Personal:** MASTER AND SERVANT: INEXPERI-
ENCED SERVANT: ASSUMPTION OF RISK. Plaintiff, a minor,
had been employed in a bakery for about ten months before she was
injured.   The forewoman commanded her to work at a large dough-
kneading machine, which she had never operated, and which had
been operated by a man skilled in its use.   The operation of the
machine was regarded as dangerous for an inexperienced person.
Plaintiff knew that it was dangerous, and when commanded to use
it she objected and was informed by the forewoman that if she did not
obey she would be discharged, or her wages reduced, whereupon she
proceeded to operate the machine and in doing so her hand was
caught between the rollers and mashed:   *Held,* that, whether plain-
tiff assumed the risk of the extra danger to which she was exposed,
was for the jury.

2. ———: ———: ———:———.   To make the doctrine of the as-
sumption of risk applicable there should be some evidence that
plaintiff assented to the risk, or acted by the direction of her own
free will in attempting to use the dough-roller.

3. ———: ———: ———: ACTING UNDER COMMAND OF MAS-
TER: ASSUMPTION OF RISK.   If a servant, under the command
of his or her master, attempts a perilous service and is injured, the
question of whether the risk is assumed is then for the jury.

4. ———: ———: ———: CONTRIBUTORY NEGLIGENCE, A
QUESTION FOR THE JURY.   Whether the plaintiff, who was in-
experienced, was guilty of contributory negligence when she placed
her hand over the rollers to push the dough that had lodged in the
trough before reaching the rollers, whereby she was injured by her
hand being caught between the rollers, is a question for the jury.

5. ———: ———: PETITION: GROUND OF NEGLIGENCE WELL
ENOUGH PLEADED. Where the petition charged specific acts of
negligence with relation to the machine, and also charged that
plaintiff had been ordered by the forewoman to operate the ma-
chine, which she did only after objecting and being told that if she
did not obey she would be discharged, the petition was sufficient to
support a judgment for plaintiff on the ground that defendant was
negligent in ordering plaintiff to use the machine, though such
negligence was not one of the acts pleaded specifically in the peti-
tion.

6. ———: INSTRUCTION, ERRONEOUS. An instruction based on
a ground of negligence not set out in the petition, is erroneous.

Appeal from St. Louis Circuit Court.—*Hon. Wm.
Zachritz*, Judge.

REVERSED AND REMANDED.

*Jones, Jones & Hocker* and *C. P. Ellerbe, Jr.*, for
appellant.

(1) The court erred in refusing to sustain a de-
murrer to the evidence by refusing to give a peremptory
instruction at the close of the whole case and in over-
ruling the motion for new trial and in arrest of judg-
ment for the following reasons: (a) Upon the plain-
tiff's own showing and the uncontradicted evidence the
injuries which plaintiff received were the result of her
own negligence and not the negligence of the defendant.
(b) There was no proof of the specific charges of neg-
ligence alleged in the petition, and the plaintiff was
permitted to recover upon an issue not embraced within
the pleading. (c) The danger incident to the use of the
machine was obvious and confessedly known by the
plaintiff and was therefore assumed. Nugent v. Milling
Co., 131 Mo. 241; Cummings v. Collins, 61 Mo. 520;
Harff v. Green, 67 S. W. 576; Walson v. Coal Co., 52
Mo. App. 366; Alcove v. Railroad, 108 Mo. 81; Clay-
baugh v. Railroad, 56 Mo. App. 630; Lucey v. Han.
Oil Co., 129 Mo. 32. (2) The petition fails to state
a cause of action for the reason that the specific acts

of negligence stated in the plaintiff's petition are not stated or shown to be the cause of the plaintiff's injury; and the instructions and the judgment are predicated upon negligence not charged in the petition. Stoneman v. Railroad, 58 Mo. 503; Holman v. Railroad, 62 Mo. 562; Smith v. Hardesty, 31 Mo. 411. (3) Unwilling observance of an order through fear of loss of employment or wages does not affect the assumption of risk. This vice runs through all of plaintiff's instructions. Leavy v. Railroad, 139 Mass. 580; s. c., 2 N. E. 115; 52 Am. Rep. 733; Sweeney v. B. & J. Env. Co., 101 N. Y. 520; s. c., 54 Am. Rep. 722; 20 Ency. of Law (2 Ed.), p. 121 and note.

*Alexander Young, Max F. Ruler* and *Upton M. Young* for respondent.

(1) Unwilling observations of an order through fear of loss of employment or wages, does affect the assumption of risks. Appellant's attorneys in support of a contrary view cited the following cases: Leavy v. Biston, 139 Mass. 580; 101 N. Y. 520. In support of respondent's view, see Keegan v. Kavanaugh, 62 Mo. 230; Schroeder v. Railroad, 108 Mo. 323; Stevens v. Railroad, 96 Mo. 207. (2) Where a hod carrier engaged in an excavation, having manifested some reluctance to descend, was ordered by his employer to go down (just as plaintiff in this case was ordered to a place of danger), and the earth caved in upon him and killed him, held, that the order was an implied assurance that there was no danger; that the laborer properly relied on the superior information of the master, and that the latter was liable. Keegan v. Kavanaugh, 62 Mo. 230; Schroeder v. Railroad, 108 Mo. 323, and cases cited. Stephens v. Railroad, 96 Mo. 207. (3) In Shortel v. City of St. Joseph, 104 Mo. 114, the court held: "Master and servant do not stand upon an equal footing, even when they have equal knowledge of danger. The position of the servant is one of subordina-

tion, and obedience to the master, and he has the right
to rely upon the superior knowledge and skill of the
master, and is not entirely free to act upon his own
suspicions of danger. (4)  The case Nugent v. Milling
Co., 131 Mo. 241 (quoted in Roberts v. Tel. Co., 166 Mo.
478), and the cases of Harff v. Green, 67 S. W. 576, and
Cummings v. Collins, 61 Mo. 520, is each clearly dis-
tinguishable from the case now before this court. In
Cummings v.Collins, supra, the court uses this language
"When a servant of mature years undertakes any labor
outside of duties he is engaged to perform, the risks
incident to which are equally open to the observation
of himself and master, the servant takes upon himself
all such risk."  In the case here cited, the servant was
of mature years and undertook (of his own volition)
such risks.  The Nugent, Roberts, Harff, and Collins
cases, cited by opposing counsel, are without applica-
tion to the case now before the court, as a careful per-
usal will make apparent.

GOODE, J.—Plaintiff Lena Adolff was employed,
in the year 1900, in the bakery of the defendant, the
Columbia Pretzel & Baking Company, and had been
employed there for ten months prior to the time she
met with the accident complained of in this action. Said
accident occurred May 7th in that year, when the plain-
tiff was a minor not quite eighteen years of age.

A dough-rolling or kneading machine was used
in the bakery and was operated by a skilled employee
called the "baker," it being a machine, as the testimony
tends to show, requiring the attention of a man, and
somewhat dangerous for an unskillful, inexperienced
person to use. The machine consisted of two iron
rollers about three feet long and ten inches in diameter,
one set above the other at a distance which could be
changed according to the thickness of dough desired;
but they were usually set about an inch or an inch
and one-half apart.  Back of these rollers was a wooden

trough as wide as they were long, set at a steep incline towards the rollers, in which the dough was placed and down which it slid to the rollers, passed between them and came out rolled or kneaded into a trough immediately in front, whence it was taken and either rerolled or carried to another machine to be cut into pretzels, loaves, or other forms of bread. The rollers were turned by two cogwheels running into each other and turned by a pulley on which ran a belt that was connected at its other end with a shaft rotated by steam power, as was all the machinery in the bakery. There were both a loose and a tight pulley, but no shift to throw the tight pulley on the loose one; and, in fact, there seems to have been a nail driven in the tight pulley to prevent the belt from working on the loose one. The result was that to stop the rollers the steam had to be shut off.

Plaintiff, although she had been employed in the bakery for ten months before she was hurt, had never worked at this machine, but had worked two months on a smaller pretzel-cutting machine, different in its construction and operation from the one that hurt her; and before that time had done manual labor.

There was testimony that on two occasions before the accident she had gone to the rolling machine to get the rolled dough, but had been interfered with by the baker before she rolled it. There was testimony also that she knew the machine was dangerous and had been warned to stay away from it.

Her testimony (and it is corroborated by that of other witnesses) is that, early in the morning of the accident, she was told by the forewoman in charge of the girls in the room to get some dough from the rolling machine or to roll some dough. This command was given to her for the reason that the baker who had charge of that machine had left the bakery some moments before and the hands were out of dough. The plaintiff remonstrated against the order, saying she was

afraid to try to run dough through the machine, but
was told by the forwoman, Annie Meisenbach, that if
she did not obey she would be discharged or her wages
cut down, as the plaintiff testified; though the fore-
woman denied giving the order and swore that
plaintiff went voluntarily to the machine in disregard
of instructions theretofore given to stay away from
it. On this point the evidence is quite conflicting. At
all events, plaintiff attempted to roll a lump of dough
through the machine; but it stuck or lodged on the floor
of the wooden trough before reaching the rollers, and
to force it through, plaintiff put her left hand over the
top of the rollers and pushed the dough towards them,
with the result that her hand was caught between the
rollers and so badly mashed to four inches above her
wrist, that the flesh was loosened from the bones and
her thumb had to be amputated.

The acts of negligence charged in the petition are
that no rules were posted in the establishment prescrib-
ing the duties and regulating the conduct of the em-
ployees; that an incompetent person and one of intem-
perate habits was put in charge of the steam dough-
roller; that the machinery was not properly made and
covered; that there was no appliance whereby the belt
might be thrown off the tight pulley, so as to stop the
rollers in case of accident; that the forewoman, know-
ing the machine was dangerous to operate by one un-
familiar with it, gave the command aforesaid to plain-
tiff to get dough from it, in obeying which order plain-
tiff, on account of her inexperience, received the inju-
ries recited.

The answer contains a general denial, a plea that
plaintiff's injuries were due to her own negligence and
that she knew of the danger incident to operating the
roller when she undertook to use it.

At the instance of the plaintiff the court gave eight
instructions; at the instance of the defendant nine-
teen, and of its own motion four; thirty-one in all. Five

others requested by defendant were refused, besides an instruction in the nature of a demurrer to plaintiff's case at the close of her evidence.

The verdict was in plaintiff's favor, her damages were assessed at $3,000, judgment was entered for that sum, and an appeal taken to this court.

Three reasons are assigned by the defendant why the demurrer to plaintiff's case should have been sustained, and they are as follows:

*First.* Whatever danger there was in using the machine was necessarily incident to its operation and was, namely, that the operator might permit his hand to be drawn between the rollers. But this risk lay open to observation and was as well known to the plaintiff as to any one else; therefore, when she undertook to use the machine she assumed the risk of injury incident to its use.

*Second.* The injury to the plaintiff was conclusively shown by all the evidence to be the result of her own negligence in permitting her hand to be drawn between the rollers.

*Third.* None of the acts of negligence alleged was proven. The evidence shows without conflict the rolling machine was in perfect condition except that it had no shift to change the belt from the tight pulley to the loose one, which deficiency had nothing to do with causing plaintiff's injury as the court below charged; that the machine was of the kind commonly used for kneading dough, and being in good repair, no negligence of the defendant can be predicated on the score of furnishing an improper or defective appliance.

Of those arguments in their order:

The first invokes the doctrine of assumption of risk by a servant, as to which the cases are more unsatisfactory and conflicting than they are in reference to any other rule bearing on liability for personal injuries. One writer, after arraying the opinions of most Anglo-Saxon courts of last resort on the subject, de-

clares their net result is "a veritable chaos of conflicting precedents." 31 Am. Law Review, 667. This conflict exists among the English as well as the American precedents. O'Maley v. Gaslight Co., 47 L. R. A. 161, note p. 162. And the Missouri decisions touching the rule have been criticised as exceptionally fluctuating and inconsistent. Limberg v. Glenwood Lumber Co., 49 L. R. A. 1, notes on pages 44 and 61. These observations are made without a thought of attempting the elucidation of this vexed topic, but to draw attention to the difficulties which beset a court in dealing with a controversy involving it, wherein both parties can cite plenty of precedents to support their respective positions. We shall take notice of general principles only so far as a reference to them promises to help in the endeavor to collect from the discordant decisions, rules to guide us in the disposition of the case in hand.

The important facts to be seized in considering the defense of assumption of risk as raised by the demurrer to the plaintiff's evidence in this case are, that operating the dough machine was outside the scope of plaintiff's original contract of employment, and the extra hazard of that task was not compensated by her ordinary wages; no compensation was paid or agreed to be paid her for the extra risk which she was coerced to undertake by fear of losing the wages she was receiving for less dangerous work, and instead of taking the risk voluntarily and of her own motion, she quailed before the danger and yielded to the forewoman's command under the influence of a threat to discharge her. On those facts we decline to hold that, as a necessary legal conclusion, she assumed the risk either by an agreement express or implied or on the theory of the maxim, *volenti non fit injuria*—that to which a person assents is not esteemed in law an injury.

The defense of assumption of risk, whether in actions between masters and servants or other parties, must be founded on a contract and tested by the prin-

ciples of contract law; or, if there was no contract, relationship between the parties which included the fatal hazard, on said maxim, which embraces assent induced by other causes as well as by contracts.

That a particular risk was assumed by an employee may logically result from the contract of employment by which, in accepting service, he accepted at the same time, the ordinary hazards of the service for a compensation made proportionate to them. A contract of that sort is expressed by parties now and then, but is more frequently raised by implication of law; and in many instances such an implication is warranted, in some measure, by the facts of the hiring. Devitt v. Railroad, 50 Mo. 302; Hare v. McIntire, 82 Maine 240; Railway Co. v. Fort, 17 Wall. (U. S.) 553; Hough v. Railroad, 100 U. S. 213; Gardner v. Railroad, 150 U. S. 349; Railway v. Babcock, 152 U. S. 190; Railroad v. O'Brien, 16 U. S. 451; Farwell v. Railroad, 8 Allen 441; Railroad Co. v. Young, 49 Fed. 723; Indermane v. Dames, L. R. 1 C. P. 274. Certainly the evidence before us does not make good beyond dispute the defense of assumed risk on the hypothesis of an agreement by which the plaintiff assented to the extra hazard; but rather tends to show the risk was not within the purview of the original hiring, nor taken into account in fixing plaintiff's wages. Neither is there proof of a special agreement in reference to the work in the course of which the accident happened.

But to make the doctrine of assumption of risk relevant, some evidence that plaintiff assented to the risk by contract, express or implied, is required unless the plaintiff acted spontaneously, or at least with the concurrence of her own will, in attempting to use the dough roller. That is to say, in default of evidence of an agreement about the matter, the defendant must rely on the maxim above stated as a foundation for the defense of assumed risk. Miner v. Railroad, 153 Mass. 398; Brewer v. Railroad, 124 N. Y. 59; Miller v. Mfg. Co.,

150 Mass. 362; Railroad v. Barber, 5 Ohio St. 541; Louisville, etc., Ry. Co. v. Conroy, 63 Miss. 562; Mundle v. Mfg. Co., 86 Maine 400; James v. Rapids, 44 L. R. A. (La.) 33; Thomas v. Quartermaine, L. R. 18 Q. B. Div. 685. Cases may be found which hold a servant assents to the greater risk when he obeys an order to do work involving it, on the theory that yielding to the command, though reluctantly, waives any claim of compensation for a resultant injury. But those decisions strike us as unsound; for the waiver of a substantial, as distinguished from a formal, right, must, like other agreements, be supported by a consideration or it is non-enforcible. Fulkerson v. Lynn, 64 Mo. App. 649; Haseltine v. Ausherman, 87 Mo. 410; Fairbanks-Morse Co. v. Baskett, 98 Mo. App. (S. L.) 53.

Moreover, the rule regarding presumed assent to a risk is modified in the case of an inexperienced employee lacking full comprehension of the danger, who received assurance from an experienced superior that the work might be safely done; as such an employee has the right to rely somewhat on the knowledge and judgment of his employer or superintendent.

And the facts may warrant an inexperienced employee in taking a positive order to perform a task as an implied assurance that it can be safely performed, although the employee is apprehensive of injury. If a servant attempt a perilous task under protest and for fear of losing his employment, full voluntary assent to incurring the danger is displaced, to some extent, by compulsion; and in this State, as well as according to many modern decisions in other jurisdictions, the question of whether the risk was assumed is then for the jury. Keegan v. Cavanaugh, 62 Mo. 230; Roland v. Railroad, 20 Mo. App. 463; Larson v. Mining Co., 71 Mo. App. 512; Cox v. Granite Co., 39 Mo. App. 424; Steel Co. v. Schymanowski, 162 Ill. 459. As the command in this case was accompanied, according to the testimony for the plaintiff, with a threat of discharge,

it was properly left to the jury to say whether plaintiff in obeying that command assumed the risk of the extra danger to which she was exposed. Shortell v. St. Joseph, 104 Mo. 114; Fogus v. Railroad, 50 Mo. App. 250; Patterson v. Railroad, 76 Penn. St. 412; Penn. Co. v. Lynch, 98 Ill. 333; Chicago, etc., Ry. Co. v. Clark, 11 Ill. App. 104; Sanders v. Barker, 6 Times L. Rep. 324; Yarmouth v. France, L. R. 19 Q. B. Div. 647; Goldthwaite v. Railroad, 160 Mass. 564; Richmond, etc., Ry. Co. v. Norment, 84 Va. 172; Railway Co. v. Adams, 105 Ind. 151; Brazil Coal Co. v. Hoodley, 129 Ind. 327; Tagg v. McGregor, 153 Penn. St. 368.

Some of those cases regard the defense when it is raised on facts like we have here, as one. of contributory negligence and as depending on the imminency of the peril. We venture the comment that this is theoretically erroneous, even if practically harmless; for if the risk was assumed the defense is complete, whether the danger was imminent or remote, and whether the servant was cautious or careless. But if the risk was not assumed in a binding manner, the question of contributory negligence arises, to be determined by the test of whether the plaintiff exercised ordinary care.

The assumption of a risk appears to involve the facts (shown by the testimony or inferred from circumstances) of comprehension that a peril is to be encountered and willingness to encounter it; that is to say, a positive exercise of volition in the form of assent to the risk. Negligence, on the contrary, arises from negative mental states like ignorance, unskillfulness or lack of caution. But eminent courts and jurists have regarded the two doctrines of assumption of risk and contributory negligence as different names for the same thing and have treated the defense according to the law of torts rather than that of contracts. Thorpe v. Railway, 89 Mo. 650; Allcorn v. Railway, 108 Mo. 81; McMullen v. Railway, 60 Mo. App. 231; Rush v.

Railway, 36 Kansas 129; Rittenhouse v. Railway, 120 N. C. 514; O'Rourke v. Railway, 22 Fed. 189.

In the present case it is immaterial which theory is right, as both defenses were interposed and submitted to the jury.

It is urged that the case of Nugent v. Milling Co., 131 Mo. 241, is like this one and should control it. The cases are alike in the circumstance that both plaintiffs got their hands mashed between rollers, but are unlike in every other respect. On reading the opinion, it will be noticed that the case shown by Nugent's evidence was entirely different from the one stated in his petition. His petition stated that the particular work in the performance of which he was hurt, was not the work for which he was employed, but was extra hazardous, as the manager of the milling company knew when he ordered it done. That was a case similar to this. But the evidence showed Nugent was injured in the course of his regular employment and in doing work which he had been doing for six months; not an outside task under a special order. The opinion says: "The work plaintiff was required to do was not extra hazardous as alleged in his petition, but according to his own language, was the work he was employed to perform. . . . Thus the question of inexperience on the part of plaintiff, and extra dangerous work performed, are out of the case as charged against the defendant on plaintiff's own showing."

In the Harf case (168 Mo. 308), which is cited also as a controlling authority, the gist of the decision was that the plaintiff risked a danger not only obvious but imminent and threatening, and therefore could not recover. There are remarks in the opinion which look like the judgment was based on the doctrine of assumption of risk; but the controlling and decisive fact was that Harf exposed himself to imminent and glaring peril, which shows the decision was rested on his contributory negligence.

Some witnesses swore the plaintiff in this case voluntarily attempted to use the roller, not only without any command being given to her, but against express warning; and the testimony as a whole required that the question of whether she assumed the risk, be referred to the jury. Lucy v. Hammer Oil Co., 129 Mo. 32; Barry v. Railroad, 98 Mo. 62.

We will next consider the second reason assigned by the defendant why the demurrer to plaintiff's case should have been granted, namely, that plaintiff's own testimony shows she was guilty of negligence in operating the roller, which contributed to or caused the injury. Two arguments are made in support of this contention: that she was negligent in encountering peril which was apparent and obvious, the danger of operating the machine being as plain to her as to any one else, and that she was negligent likewise in the unskillful mode in which she operated it.

In answer to the first argument, we state again that the issue of an employee's negligence in taking an unusual risk which arises in the course of his work (if the defense is regarded as sounding in tort), depends on whether the danger incurred was so threatening and apparent that a man of common prudence would have been deterred by it. If it was, the employee was guilty of contributory negligence and can not recover for an injury suffered; otherwise his action is not barred. Doyle v. Railroad, 140 Mo. 1; O'Mellia v. Railroad, 115 Mo. 205; Hamilton v. Coal Co., 108 Mo. 264; Alcorn v. Railroad, 108 Mo. 81; Soeder v. Railroad, 100 Mo. 681; Huhn v. Railroad, 92 Mo. 447; Blanton v. Doe, 109 Mo. 75; Settle v. Railroad, 127 Mo. 336; Herbert v. Shoe Co., 90 Mo. App. 305; Smith v. Coal Co., 75 Mo. App. 77. That rule obtains because a servant is only bound to use ordinary care, and if he does what men of common prudence do in like circumstances, he stands acquitted of negligence. Francis v. Railroad, 127 Mo.

658; Railway Co. v. Yeargin, supra; Railroad Co. v. Mares, 123 U. S. 710.

In this case, while there was danger to a novice in operating the roller, we can not declare that, as a necessary legal inference, the danger was so great that no person of common prudence would have incurred it; but must hold, on the contrary, it was a question for the jury to answer whether the plaintiff was guilty of contributory negligence.

Neither do the facts show so positively as to exclude every other rational inference, that the plaintiff's negligence in her mode of using the machine caused her hand to be caught. Plaintiff was, as stated, inexperienced, and there is testimony that the machine required experience, skill and strength. The issue of her negligence in this regard, as well as the other, was properly referred to the jury.

The third reason assigned why the plaintiff should have been non-suited is that no act of negligence charged in the petition was made good by the proof, but that the plaintiff recovered on a ground not pleaded, to-wit, the command given by the forewoman.

It may be conceded that, so far as the evidence shows, the kneading machine was of a kind commonly used in bakeries, was in good order and free from defects; at least from any which caused the plaintiff's hand to be caught or had anything to do with her injury, except that it might have been less severe if there had been a shift to throw the belt off the tight pulley. But this defect, if it was one, is not to be regarded in discussing the demurrer; because the circuit court took it out of the case by an instruction that it had nothing to do with the accident, as said court also excluded proof of the alleged employment of an intemperate baker.

If defendant is responsible for the injury, it is because of the command given by the forewoman to the plaintiff to get dough or roll some dough; and it is immaterial which words were used because the mean-

ing was the same, as plaintiff had to roll the dough through the machine to comply with the order. Defendant insists that said command is not one of the acts of negligence specified in the petition; and it is true there is an enumeration of negligent acts which does not embrace it. But further on the petition states with particularity all the circumstances connected with the order and plaintiff's reluctant obedience when she was threatened with the loss of her position. Those allegations are sufficient to charge the defendant with negligently ordering and, in a sense, forcing the plaintiff to use the roller, and sufficient to let in evidence as to whether said negligence was the proximate cause of her injury.

What we have said above disposes of the contention that the plaintiff did not make out a prima facie case; but we have now to deal with certain minor assignments of error committed in ruling on the instructions.

The given instructions are so numerous and lengthy that we can not recite them all and consider each one separately. Besides being too numerous, they were to some extent inconsistent and misleading.. Two of the instructions for plaintiff were as follows:

"The court instructs the jury that it is the duty of an employer using dangerous and complex machinery to have it properly equipped with proper appliances to protect its employees, and if the jury believe and find from the evidence that the defendant in this case was derelict in so doing, then such dereliction constitutes negligence on its part."

"The court instructs the jury that if they believe and find from the evidence in this case, that the dough roller mentioned in the evidence was not properly and safely equipped, and that in attempting to run and operate the same, under the conditions mentioned in the other instructions given herein, the plaintiff's hand was caught in said machine and that by reason of such defect her injuries were caused or increased, and that

if said dough roller machine had been properly equipped the plaintiff could have saved herself from said injuries or decreased the extent thereof, the jury will find for the plaintiff in such sum as will compensate plaintiff for the said injuries caused or increased by such defect in the said steam dough roller, if you find that there was a defect.''

The first of those instructions was too general. It contained no reference to any specification of negligence stated in the petition, but left it to the jury to find the defendant guilty of negligence because of anything in the equipment of the dough machine which they happened to think was defective, though it may have had nothing to do with plaintiff's injury nor indeed have been named as a cause of the accident. The same criticism applies to the second instruction; both were faulty in not hypothecating the particular acts of negligence alleged, but instead, leaving it to the jury to find a verdict for the plaintiff on account of some equipment or appliance they might conclude the dough roller lacked, whether that particular deficiency was proven to be the cause of the injury or not. In truth there was slight, if any, evidence to show the accident resulted from the machine being improper or defective.

Several instructions given on behalf of the defendant were, we think, too favorable to it in regard to plaintiff's assumption of risk and ought to be modified if the case is tried again.

In one instruction the jury were told that the failure of the defendant to have a shift to throw the belt, which ran the dough roller, from the tight pulley to the loose one, was not such an act of negligence as to enable the plaintiff to recover, and that the evidence on that subject was only submitted for the consideration of the jury in the event they found the defendant was guilty of other negligence which caused her injury.

In connection with that instruction, it is appropriate to notice a ruling of the court on some evidence

offered in regard to the difficulty the engineer experienced in stopping the machinery while plaintiff's arm was between the rollers. That testimony was objected to by the defendant and the plaintiff's counsel insisted it was competent because the petition charged the machinery was not properly equipped and because the engineer could not stop the roller except by shutting off the steam, on account of there being no shift. The court overruled the objection for the reason that the evidence might go to the extent of the injury as showing that if her hand could have been extricated at once the injury might have been less. But the court gave another instruction at the request of the defendant in which the jury were told the negligence of the defendant in failing to have an appliance whereby the belt could be thown off the tight pulley was not the proximate cause of plaintiff's injury, afforded no basis for recovery and that the jury should disregard any evidence tending to prove such an appliance was not maintained. Those rulings were inconsistent and may have been misleading. In fact, the case was over-instructed and the mass of charges given to the jury, we think, tended rather to obscure than to clarify the issues.

For the errors mentioned, the judgment will be reversed and the cause remanded to be retried. It is so ordered. *Bland, P. J.,* and *Reyburn, J.,* concur.