# Alabama Consolidated C. & I. Co. *v.* Hammond.

*Action for Damages for Death of Employe.*

(Decided June 30, 1908. 47 South. 248.)

1. *Master and Servant; Injury to Servant; Place to Work; Superintendent.*—A boss in charge of a gang of workmen in a quarry is under no duty to ascertain the safety of a place, unless superintendence of it is committed to him; in any event, unless the boss knew or had reason to believe that the place was unsafe, the injury to one ordered by the boss to do work at a certain place near a loose rock in the wall cannot be ascribed to the giving of the order. Therefore, a complaint alleging negligence of the boss in giving such order, when by the exercise of due diligence he should have known that the rock was likely to fall and injure the servant, is open to demurrer.

2. *Pleading; Admission by Demurrer.*—The material averments of a complaint are admitted on demurrer thereto.

3. *Master and Servant; Injury to Servant; Discovery of Defect; Evidence.*—The evidence stated and examined and held to show that the wall of a stone quarry was part of the ways or works of the master within the meaning of section 3910, subdivision 1, Code 1907.

4. *Same; Safe Place to Work.*—It is the duty of the master to provide the employes a safe place in which to work, and it is the duty of one operating a quarry to inspect the walls thereof as often as is necessary to prevent injury from falling rock or from other substance; a greater diligence is required with respect to these .examinations when the weather conditions increase the danger.

5. *Same; Contributory Negligence; Evidence.*—The plaintiff was negligent, notwithstanding the rock which injured him did not fall from the mud seam, but from the face of the wall adjoining, where it appeared that he was working in the quarry and on the morning of the accident in question it had rained and he quit the work he was doing and went upon a bench to shovel sprawl therefrom; it also apeparing that a day or two before there had been a snow and freeze, and there had been no inspection since that time, a thing known to the decedent, as well as the fact that it was dangerous to work on the bench beneath it, and he was informed when he asked to work there that the place was dangerous, and he was warned not to work near the place of the accident, and was given the choice of working on the upper end of the bench, or upon another bench which places were reasonably safe.

APPEAL from Etowah Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by N. W. Hammond as administrator against the Alabama Consolidated Coal & Iron Company for the death of his intestate alleged to have been caused by a rock falling from the quarry walls. From a judgment for plaintiff defendant appeals. Reversed and remanded.

HOOD & MURPHREE, for appellant. Counsel discuss assignments of error but without citation of authority.

GOODHUE & BLACKWOOD, for appellee. Counsel discuss assignments of error, but without citation of authority.

TYSON, C. J.—The complaint, when filed, contained four counts, numbered 1, 2, 3, and 4. It was subsequently amended by adding counts numbered 5 and 6. The

finding of the jury was expressly upon counts number-
ed 2 and 3, thus eliminating from consideration all
rulings of the court respecting the sufficiency of all
counts other than these two, and all pleas interposed
to the others.

The first of these was clearly attempted to be framed
under subdivition 3 of the employer's liability act (sec-
tion 3910 of the Code of 1907.)'   After averring the re-
lation of master and servant between plaintiff's intes-
tate and the defendant, and the authority of Varnon
to give orders to deceased, to which the latter was
bound to conform and did conform, it is further averred
that "the negligence complained of consisted in this:
That Varnon negligently directed plaintiff's intestate to
shovel dirt and rock from a bench on a wall, where there
was a rock in such position that it was liable to fall
upon plaintiff's intestate and injure him; that the fact
that said rock was in such a position that it was liable
to fall and injure plaintiff's intestate was known to
said Bud Varnon, or by the exercise of due diligence
should have been known to him, at and before the time
he directed plaintiff's intestate to shovel dirt and rock
at a place where said rock was liable to fall upon and
injure him."   It is entirely clear that the gravamen of
the count was the negligent giving of an order by Var-
non which caused the deceased, in obedience thereto, to
perform work for defendant in an unsafe place.   The
negligence complained of is predicated upon the aver-
ment of knowledge upon Varnon's part of the hazard-
ous character of the place, or upon the fact that by the
exercise of due diligence he should have known that
it was unsafe.  ·It is also entirely clear that, unless
superintendence of the place was committed to Varnon,
as well as the authorization to give the order complain-
ed of, no duty rested upon him to ascertain its safety.

Non constat, the maintenance of its safety was committed to another, and, if it was, Varnon (in the absence of knowledge or notice of its unsafe condition) had the right to assume that it was safe, and was under no duty to exercise due care in ascertaining its condition. Indeed, on the averments of the count, unless Vornon knew or had reason to believe that the rock was liable to fall, the giving of the order could not have been negligent.—*Ga. Pac. R. R. Co. v. Davis,* 92 Ala. 313, 9 South. 252, 25 Am. St. Rep. 47; *Bridges v. T. C. I. & R. R. Co.* 109 Ala. 287, 19 South. 495; *B. F. M. Co. v. Gross,* 97 Ala. 220, 12 South. 36; Dresser's Employer's liability, pp. 300-308. Moreover, if superintendence of the place was committed to Varnon, it may be seriously doubted whether the proximate cause of the injury should not be ascribed to the defect in the works or ways of defendant, rather than to the negligent exercise of superintendence. But, however this may be, it is clear to us that the injury cannot be ascribed to the negligent giving of an order by Varnon, unless, as we have said, he knew or had reason to believe that the place was unsafe. The demurrer to said count should have been sustained.

The other count was framed under subdivision 1 of said act, and sought a recovery for the death of plaintiff's intestate by reason of a defect in the condition of the ways, works, machinery, or plant used in the business of defendant. It is alleged "that said defect arose from, or had not been discovered or remedied owing to, the negligence of the defendant, or of some person in the service of defendant and intrusted by it with the duty of seeing that the ways, works, machinery, or plant were in proper condition; that said defect complained of consisted in this: That a wall under which plaintiff's intestate was engaged in the performance of his

duties at and prior to the time of his death was insecure and unsafe, so that a rock fell therefrom upon plaintiff's intestate and killed him." The objection urged against the sufficiency of this count is that it does not appear that the wall was a part of the ways, works, etc., of the defendant. The objection is not well taken, for the reason that it is in the teeth of the averment of the complaint. It being so averred, the averment must be taken as true against the demurrer.

Under the testimony we do not doubt that the wall was a part of the ways or works of the defendant, within the meaning of subdivision 1 of the act, and that the duty was upon defendant to discover and remedy the defect complained of. Indeed, it is shown by the undisputed testimony that defendant assumed the performance of this duty, by having the wall inspected and picked, so as to relieve its servants from the danger (which would otherwise obtain) of being injured by falling rock, etc. It is undoubtedly the law that the defendant was under the legal duty to furnish to the deceased a reasonably safe place in which to work, and to this end it was its duty to inspect the wall as often as was necessary to prevent injury to him and to its other servants engaged in work upon the bench, as the result of rock or other substances falling from the surface of the wall. Bailey's Master's Liability for Injuries to Servants, p. 108. And the more the weather conditions were conducive to the falling of rock or other substances, the greater was the diligence required with respect to the examination or inspection of the wall.

The evidence also establishes, without dispute, that after a snow, freeze, or rain the wall was dangerous to those engaged in work upon the bench below, because of falling rock and other substances, and that this was known to the defendant's servants engaged in work at

C 17

its quarry. These conditions caused the loosening of rock and other substances, which, unless removed by the inspector, would fall. It also tends to show that the rock which fell and struck deceased could have been discovered, had the wall been picked on the morning of the accident. It is also without dispute that there had been a snow and a freeze a day or two before, and that it rained on the morning deceased was injured, and that there had been no inspection of the wall since the snow and freeze. It is also shown that the deceased was at work at the quarry early on the morning of the accident, and that on account of rain he quit the work he was doing, and afterwards went upon the bench to shovel "sprawl," or loose rock, therefrom to the ground below.

The only reasonable inference afforded by the evidence is that he knew that the wall had not been inspected or picked, and that it was dangerous to work upon the bench beneath it. Indeed, witness Zuber swore that all of the employes knew that the wall was more dangerous after a freeze or rain. Furthermore, the testimony undisputedly shows that, when he applied to Varnon for leave to shovel "sprawl" from the bench, he was warned by Varnon not to work at the place (which was under a mud seam) where he was struck by the falling rock or "sprawl," because it was dangerous. It is true that Varnon testified that the only danger he warned him of was the danger of the mud seam; and it is also true there is testimony tending to show that the rock that struck deceased fell from a place on the face of the wall other than the mud seam. But we apprehend that this fact, if such it was, could not alter the fact that deceased was guilty of negligence which will defeat recovery in the case. He knowingly went to a place which was unsafe; and he did so of his own volition, for he was

given the choice by Varnon of working upon the upper end of this bench, or upon an upper bench, both of which places were reasonably safe. He chose the unsafe place, with knowledge of the dangerous condition of the wall above him, and this, too, after being twice warned not to do so, and in disobedience of the positive orders of Varnon, his "boss." Beach on Contributory Negligence, § 37, and notes; Bailey's Personal Injuries, vol. 1, § 1121 et seq.; 1 Shearman & Redfield on Negligence, § 207, and notes.

The affirmative charge as to this count, requested by defendant, should have been given.

HARALSON, SIMPSON, ANDERSON, and DENSON, JJ., concur.

McCLELLAN, J.—The operation in progress, and in which intestate was engaged as an employe or servant of the appellant at the time of the injury, was that of quarrying rock. The rock was being taken from a mountain side; and the method for removal was to disengage the rock, by means of drill and dynamite blast, in sections approximately 12 feet wide running across the surface of the elevation, beginning at the top. This process produced a ledge, or what is called in the record a "bench," which in distance from the top or bottom of the quarry varied as the deposit was drilled, blasted, and removed. As the bench was thus broken and the rock removed, the dangers of injury to laborers thereon from loosened and falling rock, dirt, and debris increased in the proportion that the face of the quarry was above the line of the bench. Under the influence of natural laws of the character here to be mentioned all must be presumed to be familliar with, and to engage in reference to, occurrences immediately result-

ing therefrom, rock, dirt and debris from the above and exposed face of the quarry would fall upon the lower line of the descending ledge. Among these natural causes are freezes and thaws and percolating water, the direct effect of which would be to release, to falling, material less well inbedded in or fastened to the face of the quarry. To these natural causes, the operation of which the testimony tends strongly to indicate probably conduced to the injury from the falling rock, must be added that of the concussion produced by the use of dynamite in disintegrating the rock forming the ledge or bench. It must be presumed that the method was well adapted to the purpose, as, indeed, our common knowledge teaches us it was. Upon the occasion of intestate's injury the ledge on which he was at work was about 100 feet below the top of the quarry's face, and 16 feet above the natural surface below. He had been in the service of the appellant, with duties requiring his presence almost immediately at the scene of his injury, for upwards of a year. He appears from the record to have been sufficiently intelligent to be of the class termed "ordinarily prudent," and to have been commendably industrious. The testimony does not show that in going on the ledge to work he was given any assurance, by the master or any other, that the place was safe against the dangers usually incidental to the work in progress and in the carrying on of which he was engaged at the time of his injury. A 10-pound stone, or other substance of about that weight, fell from the face of the quarry on him, knocking him from the ledge and resulting in his death.

We are of the opinion, after a careful review of the testimony explanatory of the circumstances and surroundings of intestate's employment, that, whatever may have been his exact location on the ledge just prior

to or at the time of his injury, his death was the proximate result of an occurrence the risk of which he assumed in entering upon work on the bench. It was an event ordinarily to be expected to occur to those engaged as and where he was. It was the naturally to be anticipated effect that the influences and forces operating to release materials from the face of the quarry would produce. The general conditions inducing the familiar natural laws mentioned, and the inevitable effect following the active use of dynamite below the large expanse of exposed surface of the quarry, where certainly as open to his observation as to that of the master. His consideration of them, before attempting the task, was obligatory on him as the exercise by him of that ordinary care and prudence, of which he was capable and of the necessity for the exercise of which he was informed, of one to be so engaged; and he will be held, in view of the obvious character of the dangers of the employment, to have accepted the employmment and entered upon its performance with the. consciousness that the ordinary, usual hazards thereof were as they proved to be.

It is axiomatic that negligence, to liability, of the master cannot exist where the injury is the proximate result of the dangers incident to the employment and which were known to the employed. The assumption by the injured of the risk of occurrences ordinarily attending such dangers, so known, forbids predicating a charge of negligence against the master with respect to injuries proximately flowing from those occurrences. So it follows that, the injury to intestate having proximately resulted from the known dangers ordinarily incident to his employment, there was no negligence attributable to the master, or to any one for whose conduct he was responsible. The general duty to use due

care to afford the servant a reasonably safe place in which to perform his labors has no application to those dangers ordinarily inhering in or incidental to the business pursued, and of which dangers the employe knows, or which from their obvious character he is presumed to have known. As stated, the action here is founded upon an injury proximately traceable to an occurrence consequent upon natural and necessary conditions known to intestate, and to his own error of judgment, or want of proper prudence, in accepting the hazards to which he subjected himself, and not to any alleged negligence of the master, or any other for him, in failing to "pick" the wall from which the falling material came.

The third count, to which, with the second, excluding the others, the jury expressly referred its verdict, is based upon alleged negligent conduct or omission with respect to a described defect in the condition of the ways, works, etc. Assuming, without affirming it, that the described wall of the quarry was within subdivision 1 of the liability statute, the above conclusions apply to deny a recovery under this count, for the reason that the injury in question resulted proximately from the dangers, known to the intestate, incident to the employment, and not to any defect of the condition of the ways, works, machinery, or plant of the appellant.

In my opinion the affirmative charge, requested by the defendant, should have been given, and its refusal was error, for which the judgment is reversed. This ruling being vital to a recovery in the cause, I can see no good reason to remand it.