# King, *et al. v.* Woodward Iron Co.

## *Damage for Death of Servant.*

(Decided May 30, 1912. 59 South. 264.)

1. *Master and Servant; Injury to Servant; Plea.*—Where the action was for the death of a mine employee by being struck by a tram car, a plea asserting that the employee had been warned that he must not go up or down the slope on which was a tramway, over which tram cars were pulled up or let down, but must go in or out of the mine by a different way provided for that purpose, but disregarding such warning and knowing that it was dangerous, he negligently walked up such slope and was struck and injured; and a plea setting up that such employee had been discharged previously for a violation of the rule prohibiting employees from using such slope in going in and out of the mine, and that he was afterwards employed with the understanding that he would not again violate such rule, but that in violation of such rule and agreement, he was going up such slope when struck, were good pleas of contributory negligence, and did not attempt to set up negligence in voluntarily selecting a dangerous way of doing his work when a safe way was open to him.

2. *Same.*—A plea asserting that it was dangerous to walk up and down a slope on which tram cars were passing, that the employee knew of such danger, and that he was killed while walking up such slope, and that he encountered such danger and assumed such risk without reasonable necessity for doing so, as there was a way provided by defendant which he could have used in leaving the mine, sufficiently set up contributory negligence in selecting the dangerous way out of the mine when a safe way was open to him; such plea was not demurrable as an attempt to place on the employee the risk of injury from the negligence of a co-employee for which, under the statute, the employer was liable, as it alleged that he assumed the risk of injury from his own negligence.

3. *Same; Assumption of Risk.*—The Employer's Liability Act relieves an employee from assuming the risk of injury from negligence of his co-employee, but does not render an employer liable for injuries to an employee for his own negligence, nor require the employer to assume the risk of injury from such negligence.

4. *Same.*—The term, assumption of risk, usually refers to those risks arising from the contract, either express or implied, but may also include risks voluntarily assumed by an employee in attempting to do an unnecessary thing.

5. *Same; Assumption of Risk; Contributory Negligence.*—While there is a distinction between contributory negligence and assumption of risk as a defense, yet if a plea states facts constituting a defense, it is immaterial what it is called.

6. *Same; Disobedience to Rules.*—A plea asserting that a rule of the employer prohibited employees from walking up or down the slope on which tram cars were passing, that the rule was a reasonable one, and was known to the employees, and that at the time of his employment intestate agreed not to walk up and down such slope, but that in violation of such rule and agreement, he was going up such slope when killed, was sufficient as a defense.

7. *Same; Excuse.*—Where an employee was killed while doing an obviously dangerous act in violation of the express orders and directions of the employer, and of his agreement with the employer, the fact that his act was a customary one did not excuse it, in .the absence of anything to show that the employer knew of this dangerous custom or assumed the risk of injury from it.

8. *Pleading; Replication; Requisites.*—A replication to a plea must either deny the facts set up in the plea or confess and avoid them, and is insufficient if it fails therein.

(Dowdell, C. J., Anderson and McClellan, JJ., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES W. FERGUSON.

Action by Lela King and others, as administrators of the estate of George King, deceased, against the Woodward Iron Company for damages for death of their intestate while in the employment of the defendant. Judgment for defendant, and plaintiffs appeal. Affirmed.

The substance of the complaint is sufficiently set out in the opinion. The following pleas, to which demurrers were overruled, are assigned:

"Defendant avers that plaintiff's intestate was guilty of negligence which proximately contributed to the injuries sustained by him in this; that in defendant's said mine, where plaintiff's said intestate was employed, there was a tramway on the main slope of said mine over which tramway cars were pulled up or let down said slope by means of a cable chain or rope, and plaintiff's intestate had been warned or notified by the defendant that he must not go up or down said slope, and that he must go in and out of said mine by means of a manway, which was provided by defendant for that

purpose; but plaintiff's said intestate, in disregard of said warning or notification, and knowing that it would be dangerous for him to do so, was negligently walking up said slope, or was on said slope while going out of said mine, and was struck and injured by a descending car on said line of tramway or track."

(8) "Defendant avers that plaintiff's said intestate was a miner working in said mine, prior to the time he was injured; that within said mine was a main slope on which there were tram tracks, and cars were let down on said track, and pulled up on said track by means of a hoisting engine, said slope being the haulage way on which the ore was taken from said mine, and trips of tram cars were passing up and down said slope during the working hours of said mine. And defendant avers that because of the frequent passage of cars up and down said slope, and because of the fact that cars sometimes got loose and descended said slope with great rapidity, said slope being unlighted, it was dangerous to walk up and down said slope, all of which was known to plaintiff's said intestate. Defendant avers that, with knowledge of said danger, plaintiff's said intestate was walking up said slope at the time he was injured as alleged in the complaint, and defendant avers that plaintiff's said intestate encountered the danger and assumed said risk without any reasonable necessity for his doing so, as there was a manway which defendant had provided, and which could have been used by plaintiff's said intestate in making its exit from said mine, as he well knew. Wherefore defendant says that plaintiff's intestate assumed the risk of being injured by a descending car, and was so injured."

(9) "Defendant avers that plaintiff's intestate was guilty of negligence which proximately contributed to the injuries sustained by him, in this: Plaintiff's said

intestate was a miner working in said mine, and at the time of his employment to work in said mine there was a rule which prohibited miners from walking up or down the slope of said mine, which rule was known to plaintiff's intestate, and which rule was a reasonable one, for the reason that persons walking up or down said slope were liable or likely to be struck and injured by cars ascending or descending on a tramway or track of said slope, which cars were used for the purpose of hauling ore out of said mine, and at the time of plaintiff's intestate's employment he agreed with defendant that he would not walk up or down said slope, or would not go on said slope, or would not use said slope as a passageway to and from his working place in said mine during the working hours of said mine; defendant having provided a manway for the use of miners and others in going out and coming into said mines, as plaintiff's intestate well knew, which was reasonably fit and proper for that purpose. And defendant avers that plaintiff's intestate, in violation of said rule, and in violation of his said agreement, was going up said slope at the time he was injured, or was on said slope at a place where his duties did not require him to be, and was struck and injured by a descending car or cars or the contents, by reason whereof he was injured."

(10) "Defendant avers that plaintiff's intestate was guilty of negligence which proximately contributed to the injuries sustained by him, in this: That plaintiff's intestate was a miner working in said mine prior to the time he was injured, and was discharged upon his employment as such miner on account of his violation of a rule then existing, and which had been promulgated by the defendant, prohibited miners from using the slope of said mines as a passageway in going out of or coming in to said mine, and from riding the cars on

said slope, and after plaintiff's intestate was so dis-charged from said employment for the reason afore-said, plaintiff's intestate again applied for employment in said mine, and was so employed on the understand-ing and agreement, made and entered into between plaintiff's intestate and defendant, that he would not again violate said rule, and would not make use of said slope in going out of or coming into said mine; but de-fendant avers that plaintiff's said intestate, after being so employed, again in violation of said rule, and in vio-lation of said agreement, was going up said slope, and while on said slope was struck and injured by a de-scending car or cars, or the contents thereof, and re-ceived the injuries on account of which this suit is brought."

The demurrers to the pleas were that they were con-clusions of the pleas; that they failed to set out where-in said intestate was negligent; that the allegation that said intestate carelessly and negligently placed himself in a position of danger is but a conclusion; that said plea is no answer to either the first or any other count of the complaint, to count 12, inclusive; that it is no more than the general issue; that it fails to aver that said intestate knew that he was liable to be struck and injured by the car or tram which killed him when he went up the slope; that for aught that appears said in-testate was rightfully where he was at the time of his injury, and did not know that said car was liable to break loose; that said plea fails to aver that there was any other reasonable and safe way to come out of said mine, fails to show that said danger of breaking loose of the cars was a necessary incident to the running of the cars, when being run in a reasonably careful and necessary manner, does not show that said act of said intestate was the contributing cause of his injury or

death, fails to aver when intestate had been warned, fails to aver that the intestate knew of or appreciated the danger of being killed on said slope, as alleged in the complaint, and does not show that the intestate was required by any rule of the defendant to go out of said mine by means of the manway.

These were the demurrers to plea 4, and were refiled to plea 8, with the additional grounds that plea 8 does not show that said intestate knew of said manway. The same demurrers were interposed to plea 9, with the additional ground that it presents an immaterial issue and relies upon a breach of the contract to defeat a recovery for its own negligence. The same demurrers were filed to plea 10.

The replications referred to are special replications to each of the fourth, eighth, and ninth pleas, as follows:

(1) "That in said mine there was a main slope, upon which there were operated tram cars, which were pulled out of said mines by means of a cable, chain, or rope, and along or upon said slope it was the custom of the employees of the defendant to walk in going to and from their place of work therein, and that there was no danger of defendant's employees being run over and injured, while upon said slope, by reason of the breaking loose of said cars, if reasonable care and precaution was taken by the defendant, and that it was the duty of defendant to exercise reasonable care in the operation and management of said cars, so as to guard and protect its said employees from the danger of said cars when breaking loose as aforesaid, and that defendant negligently failed to perform its said duty, and that said intestate at the time of his said injuries was in pursuance of said custom in force at said mine at said

time upon said slope, and was injured by reason of said negligence of defendant."

(2) "Plaintiff says that at the time of said injuries to said intestate, and for a long period of years thereto, it was the custom of the employees of the defendant, in going to and from their places of work in said mine, to use said slope, which said custom the defendant knowingly suffered, permitted, and acquiesced in, and that said intestate was at the time of his injury pursuing said custom, which fact was known, and while upon said slope, and after he had gone upon said slope, the negligence of the defendant alleged in the fifth count of the complaint occurred, by reason whereof said intestate's death proximately occurred."

(3) "It was the custom of the intestate and of other employees of defendant to be upon said slope at or about the time of day said intestate was injured, of which fact defendant had notice, and that in order to protect said intestate and its other employees, while thus upon said slope from being run over and injured by its cars when breaking loose and running down said slope, it was necessary for the defendant to take some precaution and exercise reasonable care for the prevention of said servants, including said intestate, from being injured in the event one of defendant's cars did break loose, which fact was known to defendant, and defendant negligently failed to exercise such reasonable care, or take any such reasonable precaution, and said intestate's death was by reason of said negligence proximately caused."

"For special replication to the tenth plea, plaintiff says, first, that said alleged rule of defendant was not in force at the time of said intestate's injury and death; second, that said alleged rule of defendant was not being enforced by the defendant at the time of intes-

tate's injury and death; third, defendant had, prior to and at the time of the injury and death, waived the compliance on the part of its employees of said alleged rule, by knowingly acquiescing in the constant use of the slope by its employees in going out of the mine for a long number of years and up to the time of the death of said intestate; fourth, defendant had without any objections suffered and permitted its employees to violate said rule, having notice of such violation for a long period of time prior to intestate's death, and had allowed said rule to fall into disuse, and did not strictly enforce said rule, and a compliance with said rule was not at the time of said injury required by the defendant."

Also the following special replications to pleas 4, 8, 9, and 10:

(5) "That at the time of said injury and death there was no other way provided by the defendant that was reasonably fit for use and travel from the place of work of said intestate in said mine."

(6) "That at the time of said injury defendant had not provided any reasonably fit, safe, suitable, and proper way for its employees and said intestate to come out of said mine, except said slope."

(7) "That the danger of said cars breaking loose and running back down said slope and injuring said intestate was not an inherent and necessary danger in the operation of said cars, and when due and reasonable care and means were used in the operation of said cars they would not break loose and run back and injure said intestate, and said cars only broke loose and ran back down said slope when reasonable and due care was not observed by defendant in the operation and management of its said cars, and the defendant had negligently failed to use due and reasonable care in the

[King, et al. v. Woodward Iron Co.]

management and running of the trip of cars that ran
over and killed said intestate, in that it negligently
had insufficient, weak, unfit, and defective link in use
in the drawing or pulling of said cars out of said mines,
of which said negligence and defective condition of
said link said intestate was ignorant, and by reason
and as a proximate consequence of which said negli-
gence of defendant said trip of cars broke loose and ran
back and killed said intestate, at a time when intes-
tate was with the acquiescence of defendant coming up
said slope."

STALLINGS & DRENNEN, for appellant.  A plea of con-
tributory negligence must aver the facts to which the
law attaches a conclusion of negligence, and must go
beyond averring it as a conclusion.—*Osborn v. Ala. S.
& W. Co.*, 135 Ala. 571; *L. & N. v. Markee*, 103 Ala.
160; *Bir. F. & M. Co. v. Gross*, 97 Ala. 220; *Wes. Ry. v.
Russell*, 144 Ala. 142; *Tallassee F. & M. Co. v. Moore*,
48 South. 593; *Huggins v. So. Ry.*, 49 South. 299; *T. C.,
I. & R. R. Co. v. Burgess*, 47 South. 1029; *Creola L. Co.
v. Mills*, 42 South. 1019; *Tutwiler C. C. & I. Co. v. Far-
ingdon*, 144 Ala. 157; *So. Ry. v. Guyton*, 122 Ala. 231.
Servants do not assume the risks arising from the negli-
gence of the master, nor of a servant for whose negli-
gence the master is liable.—Sec. 3910, Code 1907; *Pos.
Tel. Co. v. Hulsey*, 132 Ala. 444; *A. G. S. v. Burk*, 135
Ala. 401; *Ala. S. & W. Co. v. Wrenn*, 136 Ala. 475;
*Woodward I. Co. v. Andrews*, 114 Ala. 243; *K. C. M. &
B. v. Thornhill*, 141 Ala. 215; *Wes. Ry. v. Russell, supra;
N. Ala. Ry. Co. v. Shea*, 142 Ala. 119; *B. M. & C. Co. v.
Skelton*, 43 South. 110.  On these authorities, it must
be asserted that the court erred in overruling demurrers
of contributory negligence and assumption of risk filed
in this case.  The general practice and custom of ser-

vants to violate the master's rule with the knowledge or consent of the master is a sufficient answer to a plea alleging a violation of such rule.—*Ga. Pac. Ry. v. Davis,* 92 Ala. 301; *Huggins v. So. Ry.,* 49 South. 299.

CABANISS & BOWIE, for appellee. No brief came to the Reporter.

MAYFIELD, J.—This action is under the Employer's Liability Act (Code 1907, § 3910) to recover damages for the wrongful death of a servant of the defendant.

The complaint contained 12 counts. Each count alleged that the servant was employed to mine iron ore, and was killed upon a tram track used for hauling the ore from the mine, by being stricken by one of the tram cars used upon this track, and that when he was killed he was coming out of the mine, and was walking upon this tram track.

The defendant pleaded the general issue and assumption of risk and contributory negligence on the part of plaintiffs' intestate. To these special pleas, plaintiffs filed a number of replications. Of the overruling of demurrers to some of these special pleas, and of the sustaining of demurrers to some of the special replications, plaintiffs complain, and such rulings are here assigned and insisted upon as errors to reverse the judgment below, which was for the defendant. The reporter will set out these pleas and replications.

Pleas 4 and 10 were good pleas of contributory negligence, and were not subject to any one of the grounds of demurrer interposed to them. These pleas allege that intestate's death was the proximate result of his own negligence in violating an express order, instruction, or direction of the defendant not to walk up and down a tram track in the mine; and that while so walk-

ing up and down said track, in violation of defendant's orders, he was struck by a car upon said track and killed. The pleas were not, as plaintiffs argue, pleas which attempted to set up contributory negligence, in that the servant selected a dangerous way or mode of performing the service, when a safe or less dangerous way or mode was open for selection. The contributory negligence relied upon was that of *willfully violating the order or direction of the master*, and injury in consequence of such violation; and it was, of course, sufficient.

Mr. Labatt states the law upon the subject as follows: "According to nearly all the decisions, contributory negligence should be inferred, as a matter of law, whenever the injury resulted from the servant's non-compliance with a specific order given by the master or his representative, even though such an inference might not be a necessary one if the order were not a factor in the case. This doctrine is applicable whether the order related to the position which the servant was to take at a given time or place, or to the manner in which an act incident to his duties was to be done, or to the work which he was or was not to undertake, or to the purpose for which an appliance was to be used, or to the precautions to be adopted while the work was going on."—Master and Servant, vol. 1, § 363.

"A servant who has reported a dangerous spot in the roof of a mine while at work, and, contrary to orders, continued working without waiting for the props, which soon came, cannot recover for injuries caused by the fall of slate.—*Knight v. Cooper* (1892) 36 W. Va. 232, 14 S. E. 999. A servant in a mine, who disobeys a prohibition as to following the hoisting bucket up an incline, and is injured by the breaking of the rope, cannot recover.—*Patnode v. Harter* (1889) 20 Nev. 303, 21

Pac. 679. A servant who fails to follow his instructions to stand at one side, instead of in front, of an emery wheel, and is injured in consequence of such failure when the wheel burst, cannot recover.—*Smith v. Foster* (1900) 93 Ill. App. 138.". Id., note, p. 142.

Plea 8 was a good plea, and was not subject to the demurrer. Unlike pleas 4 and 10, it did set up contributory negligence, in that plaintiffs' intestate voluntarily selected a dangerous way out of the mine, when a safe one was known and open to him. While the plea does say that intestate assumed the risk, yet it is a good plea of contributory negligence, and the court will not be put in error for overruling the demurrer thereto. The plea in effect alleges that there were two ways of ingress and egress to this mine, one a tramway for transporting the ore by cars, the other a manway for the ingress and egress of the men employed in the mine; that the one was dangerous, the other safe, and that intestate, aware of these facts, negligently selected the dangerous way as an exit from the mine; and that, as a proximate result of this negligent act, he was killed by being struck by a car. Knowing of this danger, as the plea alleges, he did voluntarily assume whatever risk there was, and was, as the plea alleges, injured in consequence thereof.

If the facts alleged in this plea were true, the defendant was not, and ought not to be, liable for the death of intestate. The plea in effect alleged that intestate's death was not the result solely of the negligence alleged in the complaint, but also of that alleged in the plea. If such was the fact, it was a good defense.

The plea was not bad, in that it attempted to allege that intestate assumed the risk as to the negligence of some other servant or employee, as for which negligence the statute makes the master liable, as were the

pleas condemned in the case of *L. & N. R. R. Co. v. Handley*, 174 Ala. 593, 56 South. 539, and *Woodward Co. v. Andrews*, 114 Ala. 243, 21 South. 440. This plea set up the negligence of the intestate only, and injury in consequence thereof. It was the danger incident to his own negligence which the plea alleges he assumed, and, of course, prima facie every one assumes the danger arising from his own negligence. The plea was a good defense to the action, and to each count of the complaint to which it was sustained, no matter whether it be called a plea of contributory negligence or one of assumption of risk.

The plea clearly and certainly alleges that the intestate voluntarily selected this tramway, which was dangerous, when he knew there was a manway which was safe. This was negligence, and whatever risk attended it (nothing further appearing) he, of course, voluntarily assumed. It is too clear for argument that if he had gone out by the manway, instead of by the tramway, he would not have been killed. Knowing that one was safe and the other dangerous, it was certainly negligence to select the dangerous way.

The rule as to pleas of assumption of risk and contributory negligence as an answer to counts under the Employer's Liability Act was well stated by McClellan, C. J., in *Andrews Case*, 114 Ala. 257, 21 South. 443, as follows: "One theory of defense under these counts is that the plaintiff must be held to have assumed the risks incident to Neal's negligence by remaining on the hand car when Neal caused it to be run into this dangerous place. This idea is unsound. To sustain it would be to emasculate the Employer's Liability Act in respect of its second, third, and fifth clauses, and to rehabilitate the common-law doctrine of fellow servants as applicable to the cases provided for in those clauses, when

the clear purpose of the act is to destroy the defense of assumption of risk by the injured employee in the several cases stated in the counts referred to. An employee in such cases may be guilty of such contributory negligence as will bar his recovery; but he does not assume the risks incident to the negligence of a superintendent, or of a third person to whose orders he was bound to conform, and did conform, or of a person in charge and control of a locomotive engine, car, etc.—Reno, Employer's Liability Act, § 190.''

While the effect of the statute was to relieve the injured servant from assumption of risk as to certain negligence of his fellow servants for which the statute makes the master liable, it did not render the master liable to the injured servant for the latter's negligence, nor did it require the master to assume the risk of injury to a servant on account of the latter's own negligence; it only made the master liable to the injured servant for the negligence of other servants in those cases in which such negligent acts were covered by the statute.

It is often a question of little importance whether a given plea be called one of assumption of risk or a plea of contributory negligence. The more important inquiry is: Are the facts stated in the plea a defense to the cause or causes of action stated in the complaint or declaration? If the facts stated constituted a defense, the conclusion as to whether the plea be called one of assumption of risk or one of contributory negligence is not of much moment. Likewise, if the facts stated are not a defense to the action, it is not of much consequence whether the plea be said to be insufficient as of assumption of risk or of contributory negligence.

It is true that this and other courts have made and observed a distinction between these defenses, and there

is a difference; but not such a difference as to make this plea bad. This point as to this plea is that the facts stated constituted a good defense to each count of the complaint, as to which it was sustained, and it is immaterial what the plea is named or called. See *Foley v. Pioneer Co.*, 144 Ala. 178, 40 South. 273; *Gainer's Case*, 152 Ala. 184-188, 44 South. 652; 13 Ency. Pl. & Pr. p. 914. Assumption of risk, in actions by a servant against the master, usually implies, and refers to, those risks arising from the contract of employment, either expressed or implied, but not always. It sometimes includes risks voluntarily assumed by the servant in attempting to do something that is unnecessary, and that he is under no duty to perform; and probably the doing of that particular act may also be negligence on his part, and if a risk of injury attends such negligent act he is said, in such case, to assume the risk of his own negligence.

"The term 'assumed risk' includes generally any form of assumed risks; that is to say, risks originally incident to the work, as well as risks not so incident, but arising from the circumstance that the danger was a known one.—*International & G. N. R. Co. v. Moynahan*, 33 Tex. Civ. App. 302, 76 S. W. 803, 804. The assumption of a risk appears to involve the fact of comprehension that a peril is to be encountered and a willingness to encounter it; that is to say, a positive exercise of a volition in the form of an assent to the risk.—*Adoff v. Columbia Pretzel & Baking Co.*, 100 Mo. App. 199, 73 S. W. 321, 324." 1 Words and Phrases, p. 589.

This court has spoken as follows upon the subject: "In the case of *Mary Lee C. & R. Co. v. Chambliss*, 97 Ala. 171 [11 South. 897], the general rule was recognized that an employee, who voluntarily undertakes to perform a duty not within the scope of his employment,

assumes the risk of such undertaking. That the plaintiff's intestate voluntarily left his place as brakeman and undertook to perform the duties of a fireman as a favor to the regular employed fireman, without orders or instructions from the conductor, or any person having authority over him, and while thus engaged as a fireman was killed, we think clearly established."—*A. G. S. R. R. Co. v. Hall,* 105 Ala. 606, 607, 17 South. 176, 179.

Plea 9 was unquestionably a good plea, as it set up a voluntary violation of a known and reasonable rule of the master, provided for the safety of the servant, and that the injury was the proximate result of his so violating such rule. The special replication interposed to the pleas were not sufficient answers thereto.

The plaintiffs could not invoke a custom to excuse intestate for negligence in the doing of an obviously dangerous act which the pleas alleged he did, and did in violation of express orders and directions from the master, and did so in violation of his own express agreement. None of the special replications were sufficient to show that the master knew of this dangerous custom, or that he had assumed the risk of the servants' doing what the intestate was doing when injured. None of them denied the facts stated in the pleas, nor did they sufficiently confess and avoid the pleas; hence the court did not err in sustaining the demurrers thereto.

Finding no errors in the record, the judgment is affirmed.

Affirmed.

SIMPSON, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., dissent, being of the opinion that pleas 4 and 8 were bad, and subject to the demurrer.