(91 South. 623)

### MARBURY LUMBER CO. v. JONES.
### (3 Div. 525.)

(Supreme Court of Alabama.    Oct. 13, 1921.
Rehearing Denied Nov. 24, 1921.)

**1. Master and servant ⬤⟾243(1)—Employee's violation of order to burn old structure held contributory negligence.**

While the doctrine of assumption of risk, strictly speaking, is inapplicable where the negligence relied on is that of a superintendent, a workman injured by the fall of an old water tank used in erecting a new tank, who was informed by the general manager of the dan-

ger of working on an old structure, and who violated the manager's order to burn it down as the safest course, voluntarily assumed the risk and was therefore guilty of contributory negligence, and he was not freed from such negligence by assurance of an office man that he would "stand between" him and his employer; such language indicating, not a purpose to countermand the order, but merely an encouragement to disregard it.

**2. Master and servant ⬤⟾247(5)—Violation of order held a proximate cause of injury by falling structure.**

Deceased employee's failure to obey orders to burn down an unsafe water tank which fell while he was working thereon *held* a proximate cause of his death, so that his administratrix could not recover, though the negligence of the superintendent concurred in the result.

**3. Courts ⬤⟾90(1)—Opinion in former suit growing out of same facts not authority on questions not presented.**

An opinion in a former suit growing out of the same facts is not an authority on questions not presented.

Appeal from Circuit Court, Autauga County; B. K. McMorris, Judge.

Action by Josephine Jones, as administratrix of the estate of A. D. Jones, deceased, against the Marbury Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

James J. Mayfield and Rushton & Crenshaw, all of Montgomery, for appellant.

The defendant was entitled to the affirmative charge, because of the undisputed contributory negligence of the deceased, and because he took an unsafe way to do the work, when he had been told and warned by his superior to do it otherwise. 114 Mich. 83, 72 N. W. 13; 156 Ala. 253, 47 South. 248; 177 Ala. 497, 59 South. 264; Labatt on M. & S. vol. 3, p. 1279; Beach on Contributory Neg. 544; 91 Ala. 443, 8 South. 357; 18 Times L. R. 26; 53 Scott L. R. 1; 162 Pac. 1040; 171 Cal. 728, 154 Pac. 834, L. R. A. 1916D, 903; 69 Ind. App. 24, 118 N. E. 132.

Hill, Hill, Whiting & Thomas and Eugene Ballard, all of Montgomery, and P. E. Alexander, of Prattville, for appellee.

Any statement between Rudder and Mayberry as to Rudder's authority or want of authority, unknown to Jones, was not binding on Jones. 194 Ala. 684, 69 South. 918; 156 Ala. 369, 47 South. 48. The company was bound to Jones, Davis, and the others on the job. 14 C. J. 382. The failure to burn the tank was not the proximate cause of the injury. 196 Ala. 52, 71 South. 686; 160 Ala. 594, 49 South. 369; 204 Ala. 649, 87 South. 168; 202 Ala. 149, 79 South. 619; 165 Ala. 521, 51 South. 835; 144 Ala. 192, 40 South. 280; 153 Ala. 232, 45 South. 238, 16 L. R. A.

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(N. S.) 301; 121 Ala. 221, 25 South. 609. The facts presented by the record do not convict Jones of contributory negligence. 204 Ala. 241, 85 South. 453; 199 Ala. 177, 74 South. 246; 149 Ala. 465, 43 South. 110; 165 Ala. 532, 51 South. 835; 163 Ala. 237, 50 South. 1025; 163 Ala. 371, 50 South. 880, 136 Am. St. Rep. 79; 163 Ala. 626, 50 South. 894; 150 Ala. 368, 48 South. 348; 174 Ala. 593, 56 South. 539.

GARDNER, J. Prior to 1912, the Marbury Lumber Company operated a large sawmill at Marbury, Ala., and in connection therewith used a water tank which supplied water for the mill. This tank was about 55 feet high, and was constructed with four large upright posts, one at each corner, and another at each corner called the "batter posts" or "brace posts," which came up from the corner at an angle with the upright posts. These "batter posts" were nailed to pieces of timber which were fastened to plumb posts, and sills or joists extended across the top, on which rested a tub or tank about 18 feet high and 18 feet in diameter. The lumber company ceased the operation of its mill in 1911, and built a smaller mill at Wadley, removing much of the old mill to that place.

In 1918 the lumber company did no business at Marbury, except to sell off what lands it had left, and to remove the machinery from the old mill. It still owned considerable timber in the vicinity of Marbury, but was not engaged in the manufacture of lumber or any other active operation.

The lumber company owned practically all the property in the town of Marbury, and the town was supplied with water from the tank of the company. The tank as thus constructed had been there for a number of years, and had become very dilapidated. D. H. Marbury was president of the company, and had been since the death of his father in 1895, and in active charge of all its affairs. He was general manager, the alter ego of the company. Marbury determined upon the erection of a new tank to take the place of the old. The plaintiff's intestate, A. D. Jones, had been employed by the company as a laborer, and afterwards in charge of a stationary engine at the mill while it was in operation. When the mill closed down, he moved from Marbury and remained away about five years, returning in 1916. Upon his return he built a store at Marbury, which he operated at the time of his death, and also did odd jobs for the company from time to time. The testimony of Marbury shows that, when the company wanted anything done, it called upon Jones to do it; the latter being referred to as the "handy man" for the Marbury Lumber Company. The new tank was to be constructed exactly like the old, except to be five feet higher. On a Saturday in April, 1918, while Marbury was in the town of Marbury he saw Jones, plaintiff's intestate, in regard to this matter, and went with Jones to see the old tank, instructing him [Jones] to burn it down to which Jones replied it would destroy much wood and the pipes if burned down; but Marbury still insisted, informing him that he thought it was the safest thing to do—to quote the language of the witness:

"I told him I thought the safest thing to do was to burn it; that I make a rule never to send a man to go where I would not go myself, and I certainly would not go on top of that tower."

After giving these instructions, Marbury left the town the following Monday.

Marbury did not see the work while in the course of construction, and did not know until after the accident that the tank had not been burned according to his directions. One Davis was operating a sawmill, and the timbers for the new tank were ordered from him. There is evidence showing that Davis actually superintended the work, and that Jones and the other laborers were working on the tank under his direction. One Rudder was operating a bank at Marbury, and was also secretary and treasurer of the Marbury Lumber Company. He was office man, and bookkeeper. He was not a stockholder, and had no interest in the company; but there is evidence tending to show that, in the absence of Marbury, Rudder was in charge of the affairs of the company at that place. There is further evidence tending to show that Marbury had suggested to Rudder that he might get Davis to do the work; but as to who first actually spoke to Davis is not made clearly to appear. Jones, himself, spoke to some of the workmen in regard to getting employment for the job. A witness by the name of Mills testified that Marbury told Jones to burn the old structure, but that Rudder told him not to do so; that he could get a man to build it and save the lumber and pipe; and that Rudder got Davis, who was using the old tank as a "gin pole" in the construction of the new. The old structure was not burned, but as a support there was a rope tied to the old tank, which was fastened to a post which was in the ground some 18 inches. The result was that the entire structure fell, resulting in the death of three of the men who were working thereon.

One of these men was Heinege, whose administratrix brought suit against the same company; the report of the litigation being found under the style of Marbury Lumber Co. v. Heinege, 204 Ala. 241, 85 South. 453.

That Davis as superintendent of the job was guilty of negligence in having the work done by the use of the old tank and the structure which supported it, is clearly established, as the evidence is without dispute that it was dangerous, that the old tank was

rotten, that the structure would frequently rock while the men were engaged in working thereon, and that the one rope fastened from the old tank to the post just referred to was wholly insufficient to afford protection. But it is strenuously insisted by counsel for appellant that the affirmative charge should have been given the defendant upon the theory that the evidence was without dispute that plaintiff's intestate was guilty of contributory negligence, which would bar recovery. This presents the pivotal question in the case, and one which in our opinion is decisive thereof, adversely to the appellee.

There is some conflict as to whether Jones had previous experience in the carpenter business, but it was without dispute that he had been much in the employ of the defendant company, doing odd jobs from time to time, and the condition of the old structure must have been apparent. He knew Marbury, and knew. of course, that he was general manager, and the alter ego of the company, and he went with Marbury to see the old tank, and was told by him to burn it down, as the safest thing to do.

The purpose of Marbury was to construct a new tank, and the destruction of the old was merely an incident—the preliminary matter to the real object of the work. He told Jones to burn it down, as the safest thing to do, that he would not advise any man to do what he would not do, and he certainly would not go upon that tower. Marbury says he left the destruction of the tank entirely with Jones, and it is without dispute that he was entirely ignorant that his directions had not been carried out until this accident occurred.

[1] Plaintiff in this cause as administratrix could not recover unless Jones himself, had the accident not resulted fatally, could have done so, and it is quite clear that Jones violated the positive and plain instructions of Marbury, and could not have recovered on account of such contributory negligence. Upon this question in King v. Woodward Iron Co., 177 Ala. 487, 59 South. 264, this court said:

"The contributory negligence relied upon was that of willfuly violating the order or direction of the master, and injury in consequence of such violation; and it was, of course, sufficient.

"Mr. Labatt states the law upon the subject as follows: 'According to nearly all the decisions, contributory negligence should be inferred, as a matter of law, whenever the injury resulted from the servant's noncompliance with a specific order given by the master or his representative, even though such an inference might not be a necessary one if the order were not a factor in the case. This doctrine is applicable whether the order related to the position which the servant was to take at a given time or place, or to the manner in which an act incident to his duties was to be done, or to the work which he was or was not

to undertake, or to the purpose for which an appliance was to be used, or to the precautions to be adopted while the work was going on.' Master and Servant, vol. 1, § 363."

In the opinion in that case there was a discussion also as to the distinction between assumption of risk and contributory negligence. The doctrine of assumption of risk, strictly speaking, as applied to its particular case where the negligence relied upon is that of the superintendent, would not be a defense. Jones, however, in the instant case, being informed of the danger incident to the work, and being instructed by his master not to take the risk, but to select the safe course, violates the instructions, and does not pursue the safe course, assumed the risk incident thereto, and such risk voluntarily assumed would constitute contributory negligence. Speaking to this question, the court in King's Case, supra, said:

"Assumption of risk, in action by a servant against the master, usually implies, and refers to, those risks arising from the contract of employment, either expressed or implied, but not always. It sometimes includes risks voluntarily assumed by the servant in attempting to do something that is unnecessary, and that he is under no duty to perform; and probably the doing of that particular act may also be negligence on his part, and if a risk of injury attends such negligent act he is said, in such case, to assume the risk of his own negligence.

" 'The term "assumed risk" includes generally any form of assumed risk; that is to say, risks originally incident to the work, as well as risks not so incident, but arising from the circumstance that the danger was a known one. International & G. N. R. Co. v. Moynahan, 33 Tex. Civ. App. 302, 76 S. W. 803, 804. The assumption of a risk appears to involve the fact of comprehension that a peril is to be encountered and a willingness to encounter it; that is to say, a positive exercise of a volition in the form of an assent to the risk. Adoff v. Columbia Pretzel & Baking Co., 100 Mo. App. 199, 73 S. W. 321, 324.' 1 Words and Phrases, p. 589."

Jones knowingly and of his own volition chose the unsafe manner, after having been duly warned. Ala. Cons. C. & I. Co. v. Hammond, 156 Ala. 253, 47 South. 248; Labatt's Master & Servant (2d Ed.) vol. 3, § 1255, and authorities cited in note.

But counsel for appellee seek to avoid the application of this principle to the case in hand by that part of the testimony tending to show that, in the absence of Marbury, Rudder was in charge of the company's business, and that Jones was acting pursuant to Rudder's instructions. In this connection, it may be stated that, as we understand the record, what Rudder said to Jones was on the same day on which Marbury had instructed Jones to burn the old tank down, and while Marbury was yet in the town of Marbury. There is no evidence that Rudder

would be considered in charge of the affairs of the company except in the absence of Marbury. We do not agree with the insistence of counsel for appellee to the effect that this absence of Marbury means only absence from the office of the secretary and treasurer of the company; for, when it is considered that the company was in fact engaged in no active business except the sale of its properties, this term clearly means absence from the town of Marbury. It may therefore be seriously questioned that, under the testimony, Rudder had any authority to give an order, the effect of which would be to countermand that given by Marbury while he was yet at that place. But, aside from this, we do not construe the testimony of Mills as showing a countermand of the orders of Marbury. Mills states that Rudder told Jones that he would get a man who would not burn the old tank down; that he would stand between him and Marbury, using the language of the witness, quoting Rudder: "He said to Mr. Jones, 'I will stand between you and Mr. Marbury. I will get a man.'" We are not here dealing so much with the question involved in the doctrine of respondeat superior, but that of contributory negligence. We hardly conceive that Jones could free himself of contributory negligence in violating the positive instructions of Marbury by the language just quoted. Jones' place of business was very near Rudder's bank. He knew he was an office man, and that Marbury had general charge of the business of the company, and the very language that Rudder used in this conversation indicated, not a purpose on the part of Rudder to countermand the order of Marbury or override his directions, but merely an encouragement to Jones to disregard the order, and assurance that he would stand between him and Marbury as to consequences. Jones goes to work on the old structure notwithstanding the warning and positive instructions of Marbury to the contrary. While the work was in progress, he was warned as to the danger by a fellow laborer, who, after working upon the structure for a while, complained to Davis as to its safety and quit work a short time before the accident.

The case of Soderstrom v. Holland-Emery Lbr. Co., 114 Mich. 83, 72 N. W. 13, cited by counsel for appellant, is very much in point, and tends strongly to support the conclusion we have reached. It is cited as bearing close analogy to the facts here under consideration, but we deem a discussion thereof unnecessary.

The evidence in this cause has been carefully examined by the court in consultation, and we have reached the conclusion that plaintiff's intestate voluntarily assumed the risk of the peril incident to the manner of his work, with full knowledge of the danger and ample warning thereof by others, and in direct violation of the instructions of Marbury who was superior in authority to all, and that what was said by Rudder to said intestate in no manner excuses such contributory negligence. This is the effect of the undisputed evidence in the case, and, under such circumstances, the affirmative charge as requested by defendant should have been given. McAdory v. L. & N. R. R. Co., 94 Ala. 277, 10 South. 507; Soderstrom v. Lumber Co., supra.

[2] The evidence is without dispute that had the old structure been burned down, as directed by Marbury, the accident would never have occurred. Counsel for appellee argue that the failure to burn the tank was not the proximate cause of Jones' death, but merely a condition—not a cause proximately contributing to Jones' fall but remote thereto—citing Garrett v. L. & N. R. R. Co., 196 Ala. 52, 71 South. 685; T. C. I. & R. Co. v. Gandy, 160 Ala. 594, 49 South. 369. We do not consider a discussion of this question necessary in view of the undisputed proof above shown, and which we consider self-evident. Many authorities upon the question of proximate cause were cited and reviewed in the comparatively recent case of Western Assurance Co. v. Hann, 201 Ala. 376, 78 South. 232.

Upon reconsideration of this cause counsel for appellee most vigorously insist the court is in error in this last holding, and this upon the theory that the negligence of Davis, the superintendent, was the proximate cause. The argument, however, loses sight of the fact that the contributory negligence of Jones need not have been the sole cause of the injury, but it is only sufficient if his negligence proximately contributed to his death. The negligence of Jones and Davis may have concurred in the result, but this would not have sufficed to free Jones from the consequence of his own negligence.

As previously pointed out in this opinion, Marbury had instructed Jones to destroy the old tank, warning him particularly of the danger thereof. He knew at the time he went to work with Davis that it was against Marbury's instructions that the old structure be used in the erection of the new. As before stated, its dilapidated condition must have been apparent, and the undisputed proof is that the structure would rock while the men were at work thereon, and while at work one of his fellow workmen quit the job, and told Jones of its unsafe condition. Every ascent he made upon this structure must have been with a conscious disregard of Marbury's instructions, and his remaining thereon in disregard of these warnings.

True, the negligence of Davis doubtless also contributed to the result; but this court has frequently treated the question of proximate cause in connection with the concurrent

negligence of two persons. In Howe Tel. Co. v. Fields, 150 Ala. 306, 43 South. 711, quoting from Cooley on Torts, it is said:

"If damage has resulted directly from concurrent, wrongful acts of two persons, each of them may be counted on as the proximate cause, and the parties held responsible jointly or severally for the cause."

And in Western Ry. of Alabama v. Sistrunk, 85 Ala. 352, 5 South. 79, the same principle is stated in slightly different language, as follows:

"If the defendant's wrongful act is one of two or more concurring efficient causes, other than the plaintiff's fault, which co-operate directly to produce the injury, this, under the authorities, is all that is requisite to fasten a liability on him."

To like effect is the case of Thompson v. L. & N. R. R. Co., 91 Ala. 501, 8 South. 406, 11 L. R. A. 146, from which a pertinent quotation is taken, and set out in Western Assurance Co. v. Hann, supra. One of the illustrations given in the Thompson Case of this question of proximate cause and concurrent negligence of two persons in relation thereto is the following:

"An article at the end of a chain may be moved by a force applied at the other end, that force will be the proximate cause. * * * Suppose the force at the other end is not sufficient to move the article, and a new, independent, intervening force is applied which effects a removal, the new force will be held the proximate cause. But, if the original force itself is sufficient to move the article, and will surely move it, and a new, independent force intervenes, sufficient of itself to move the article, and which in consequence of the first force accelerates or hastens the movement of the article; the new force does not 'solely' or 'alone' produce the movement, but the first force is concurrent, and co-operates with the new force, and is a sufficient cause."

While it may be that the negligence of Davis, the superintendent, intervened and accelerated or hastened the result, yet, under the undisputed evidence in the case, it could not be held the sole cause, but could only be said to be concurrent and co-operative with the all-sufficient negligence of Jones, and therefore in no manner excused the latter.

We are convinced of the soundness of the original opinion upon this question, but have slightly extended its treatment in deference to the earnest argument of counsel for appellee.

[3] The case of Marbury Lumber Co. v. Heinege, supra, a suit growing out of this same accident, is not an authority upon this appeal, as the questions here considered were not there presented; the facts upon the question of contributory negligence being entirely distinct.

For the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, THOMAS, and MILLER, JJ., concur.